UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROSSILLEE PATTERSON, *et al.*,                    Case No.  1:13-cv-49

      Plaintiffs,                                   Judge Timothy S. Black

vs.

BEST BUY CO., INC.,

      Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART
VARIOUS MOTIONS TO STRIKE**

This civil action is before the Court on: (1) Plaintiffs' motion to strike the

declarations of Kelly Broyles (Doc. 65), and the parties' responsive memoranda

(Docs. 104, 119); (2) Defendants' motion to strike portions of Rossilee Patterson's

declaration (Doc. 90), and the parties' responsive memoranda (Docs. 107, 118);

(3) Defendants' motion to strike portions of Robert Reed's declaration (Doc. 91), and

the parties' responsive memoranda (Docs. 109, 113); (4) Defendants' motion to strike

portions of Chonda Betts' declaration (Doc. 92), and the parties' responsive memoranda

(Docs. 105, 116); (5) Defendants' motion to strike portions of Mary Bates' declaration

(Doc. 93), and the parties' responsive memoranda (Docs. 108, 115); (6) Defendants'

motion to strike portions of Larry Patterson's declaration (Doc. 94), and the parties'

responsive memoranda (Docs. 106, 117); (7) Defendants' motion to strike William

Marcussen's deposition (Doc. 95), and the parties' responsive memoranda (Docs. 111,

114); and (8) Defendants' motion to strike Jerome Zoeller's deposition (Doc. 96), and

the parties' responsive memoranda (Docs. 110, 112).

# I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) provides that, upon motion, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## A.  Post-Deposition Affidavits

Striking an affidavit or a portion thereof lies in the trial court's sound discretion. *Aerel S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006).  Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e). Affidavits that do not satisfy the requirements of Rule 56(e) are subject to motions to strike.  *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp.2d 948, 954 (S.D. Ohio 2000).

Moreover, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."  *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  When faced with a request to strike a post-deposition affidavit, this Court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L*, 448 F.3d at 908.  If such a contradiction is found, this Court must strike the affidavit "unless the party opposing summary judgment provides a persuasive justification for the contradiction."  *Id.*

2

Rule 56(e) sets forth three requirements for affidavits which are used in support of or in opposition to a motion for summary judgment. It provides that those affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." These requirements are mandatory. Charles A. Wright, *et al.*, Federal Practice and Procedure § 2738 (2d ed. 1983); *Collazos-Cruz v. United States*, No. 96-5452, 1997 U.S. App. LEXIS 17196, at *6 (6th Cir. July 3, 1997). *See also Harrah's Entm't Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004) ("It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment."); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) (affidavit must be based on personal knowledge, not hearsay or inadmissible evidence).[1]

### B. Lay Opinion Testimony

An affidavit or declaration filed at the summary judgment stage must be based on personal knowledge:

> Parties must demonstrate that their summary judgment affidavits are made on personal knowledge…Affidavits based on mere "information and belief," as opposed to facts the affiant knows to be true, are not proper…In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts.

---

[1] Plaintiff cites *Ortiz v. Anchor Realty Constr., Inc.*, Case Nos. 2:08cv800, 2:09cv337, (S.D. Ohio June 14, 2011), for the proposition that even if the Court determined that Plaintiff's declarations contain inappropriate legal conclusions, the Court need not strike the declarations, but can instead consider them for whatever value they possess. However, Plaintiff fails to cite a specific document or pinpoint cite for this proposition. Accordingly, the Court cannot find the citation. "[J]udges are not like pigs, hunting for truffles that might be buried in the record." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

*Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007).  "Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005).

Rule 602 of the Federal Rules of Evidence set forth the personal knowledge requirement for a witness to testify to a matter.  The Sixth Circuit has held that "[t]he threshold for Rule 602 is low[,]" and "testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about."  *United States v. Smith*, 516 F. App'x 592, 595 (6th Cir. 2013).  The term "[p]ersonal knowledge means knowledge produced by the direct involvement of the senses."  *United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014).

## II.     ANALYSIS

### A.     Kelly Broyles

Defendant filed multiple dispositive motions and attached to each motion a declaration from Kelly Broyles.  Kelly Broyles is a former District Human Resources Manager for Best Buy.  (Doc. 43-2 at ¶ 3).  Broyles was employed by Best Buy for nine years prior to her position being eliminated in Best Buy's 2014 reorganization.  (*Id.*)  For the last seven years of her employment, Ms. Broyles was the District Human Resources Manager for the district where Plaintiffs Rossilee Patterson, Larry Patterson, Ronnie Hill, Chonda Betts, Mary Bates, and Robert Reed were employed.  (*Id.*)

4

Plaintiffs claim that various paragraphs in Ms. Broyles' declarations should be stricken, because they are inconsistent with her prior deposition testimony, contain facts not in evidence, are misleading, and/or contain information of which Ms. Broyles has no personal knowledge. Specifically, Defendant argues that portions of her declaration improperly supplement deposition testimony and relate to matters about which Ms. Broyles previously testified she had little or no knowledge. (Doc. 119 at 3).[2]

### 1. *Declaration regarding Rossilee Patterson (Doc. 43-2)*

Kelly Broyles' declaration filed in support of Best Buy's motion for summary judgment against Rossilee Patterson states, in part, that Mr. Patterson's original employment application with Best Buy was false. (Doc. 43-2 at ¶¶ 5-7). She states that Best Buy would never have hired him in 2006, because of this false application. (*Id.*) She further states that the false employment application was grounds for his discharge. (*Id.*)

Plaintiff claims that paragraph 7 should be stricken, because Ms. Broyles has no firsthand knowledge about the policies, procedures, and guidelines at Best Buy in 2006, and therefore cannot state that Patterson's employment application was grounds for discharge. Additionally, Plaintiff argues that Ms. Broyles was not involved in his hiring and never inquired as to substance of his employment with Time Warner Cable. Therefore, Ms. Broyles' blanket statements that Plaintiff would never have been hired at Best Buy because of the information in his employment application is speculative.

---

[2] Notably, Plaintiffs fail to make specific allegations about what information Ms. Broyles declined to testify about in her deposition. The Court cannot surmise what facts Plaintiffs are referencing.

As admitted in Mr. Patterson's declaration, Best Buy was unaware of the true reasons for his discharge from Time Warner until his deposition. (Doc. 43-2 at ¶ 6). Therefore, Best Buy did not present Plaintiff's employment application at his deposition. Rather, Plaintiff revealed the reasons for his departure from Time Warner at the deposition and was then asked whether he disclosed this information to Best Buy during the hiring process. When questioned about what he would have disclosed on the Best Buy employment application, Plaintiff did not allege that he had any agreement with Time Warner. (Doc. 76 at 224-225). Rather, Plaintiff testified that he did not recall if Best Buy asked him the reason why he was separated from Time Warner. (*Id.*)

The employment application certifies that "the information given by [Patterson] is true in all respects." (Doc. 43-2, Ex. B). More importantly, the application provides the following verification: "I certify, under penalty of perjury, that all of the above information is true and complete, and I understand that any falsification or omission of information may result in denial of employment or, if hired, may result in termination regardless of the time lapse before discovery." (*Id.*) Broyles' declaration simply confirms that this is Best Buy's policy and that Mr. Patterson would have been discharged had Best Buy learned of the falsification during his employment with Best Buy. (*Id*. at ¶ 7). Because Broyles was the District Human Resources Manager for seven years in the district where Mr. Patterson worked, she has personal knowledge of these facts. Accordingly, the Court declines to strike these statements.

2. ***Declaration regarding Larry Patterson (Doc. 38-2)***

Next, Plaintiff argues that Ms. Broyles' declaration filed in support of Best Buy's motion for summary judgment against Larry Patterson is misleading.  Ms. Broyles discusses Plaintiff's termination for inboarding in 2012.[3]  (Doc. 38-2 at ¶ 7).  Specifically, Ms. Broyles alleged that the Peer Review Process was voluntary, Plaintiff was not required to participate, and that Plaintiff understood that if the peer review panel reinstated him to employment, one of the conditions to his return would be to execute a release in favor of Best Buy for all claims relating to the Peer Review Process.  (*Id*.)  Plaintiff claims this portion of the declaration should be stricken.

Plaintiff argues that he was wrongfully terminated in 2012.  (Doc. 63-2 at ¶ 38).  After his termination, he requested a peer review because he did not think the termination was justified.  (*Id.* at ¶ 40).  Under the Peer Review Process, a panel decision was final and binding on Best Buy.  (Doc. 38-2 at ¶ 25).  Plaintiff alleges that the process did not include the requirement that the successful employee under the Peer Review Process be required to execute a release as a condition of reinstatement.  (Doc. 38-2, Ex. B).

Plaintiff won his appeal.  (Doc. 63-2 at ¶ 41).  Plaintiff claims that he was entitled to immediate reinstatement without the requirement of any additional action, but, in violation of the Peer Review Process policy, he was instructed to sign a waiver/release form in order to be reinstated.  (*Id.* at ¶ 43).  No person from Best Buy explained the document to Patterson, but he signed the document because he was instructed that signing a release was a prerequisite to reinstatement.  (*Id.* at ¶¶ 44-45).  Plaintiff argues that

---

[3] "Inboarding" is a term used to describe the process of discounting products by combining free services.

executing a release in order to be reinstated was inconsistent with the Peer Review

Process policy and was retaliatory. (Doc. 38-2 at 23).

It appears that Mr. Patterson simply disagrees with Broyles' testimony regarding

the Peer Review Process. However, in her declaration, Broyles only confirmed the same

facts that Mr. Patterson testified about regarding the Peer Review Process. (Doc. 38-2 at

¶ 7). Accordingly, the Court declines to strike these statements.

### 3.  *Declaration regarding Chonda Betts (Doc. 41-2)*

Next. Plaintiff argues that Ms. Broyles' declaration filed in support of Best Buy's

motion for summary judgment against Chonda Betts is misleading and contradicts

Broyles' deposition testimony.

Specifically, Ms. Broyles addresses a temporary manager position that she was

interested in in 2010, but that was awarded to another employee, Amanda Peterson.

(Doc. 87 at 124). Ms. Broyles states in her declaration that "whether or not Plaintiff

applied for the temporary position, Peterson was more qualified for the promotion."

(Doc. 41-2). However, at her deposition, Ms. Broyles testified that the decision regarding

Peterson's promotion was made by the hiring manager and she was not involved in the

hiring process. (Doc. 37 at 390-392). Furthermore, Plaintiff argues that Broyles had no

idea that Betts had applied for a management position. (*Id*. at 391).

Ms. Broyles' declaration confirms that she "was very familiar with Peterson's

qualification and employment background" at the time of the promotion. (Doc. 60-2 at

¶ 7). Moreover, whether or not Peterson was more qualified that Betts is irrelevant. Ms.

8

Betts cannot state a *prima facie* case for failure to promote, because she never applied for the position. Accordingly, the Court declines to strike the statement.

### 4.    *Declaration regarding Mary Bates (Doc. 40-2)*

Ms. Broyles filed a declaration in support of Best Buy's dispositive motion requesting dismissal of Bates's claims. (Doc. 40-2). Broyles states in the declaration that the decision to terminate Bates was a "business decision" by Best Buy. (Doc. 42 at ¶ 9). Plaintiff argues that when questioned at her deposition regarding Bates' termination, Ms. Broyles testified that she was unaware of who made the decision to terminate her. (Docs. 35 and 37 at 307, 389-390). Therefore, Plaintiff argues that Broyles' declaration contradicts her deposition testimony ad should be stricken.

Ms. Broyles' declaration simply confirms facts alleged by Bates. (Doc. 40-2 at ¶¶ 6-8). Best Buy's decision to terminate Bates, and who terminated Bates, are two separate facts that do not conflict. Accordingly, the Court declines to strike the statements.

### 5.    *Declaration regarding Robert Reed (Doc. 42-2)*

Kelly Broyles filed a declaration in support of Best Buy's dispositive motion requesting the dismissal of Robert Reed's claims. (Doc. 42-2). She states that Reed applied for the General Manager position at Best Buy store 153 in 2011, but that the position was ultimately awarded to Tim Oldean. (*Id.*) Ms. Broyles maintains that Tim Oldean was more qualified than Reed for this position. (*Id.* at ¶ 8). Ms. Broyles did not make the decision to hire Oldean -- that decision was made by James Slough. (Doc. 37 at

464).  Therefore, Plaintiff argues that Broyles' declaration is misleading, because it contains evidence for which she has no personal knowledge.

Broyles' declaration simply confirms Oldean's qualifications and the reasons why Oldean was selected for the position.  (Doc. 42-2 at ¶ 8).  At her deposition, Broyles was simply asked whether Reed applied for the position and who made the decision to promote Oldean.  (Doc. 37 at 460-463).  Broyles was never asked about the reasons why Oldean was selected for the promotion.  (*Id.* at 560-463).  Accordingly, the Court declines to strike the statements.

### 6. *Declaration regarding Ronnie Hill (Doc. 39-2)*

Kelly Broyles filed a declaration in support of Defendant's dispositive motion against Ronnie Hill.  (Doc. 39-2).  In the declaration, Broyles allegedly makes blanket statements about the qualifications of certain employees who were competing with Mr. Hill for promotions at Best Buy.  However, at her deposition, Ms. Broyles testified that she was not involved in the decision making process for any of the promotions sought by Mr. Hill.  (Doc. 37 at 419, 444-445).  Furthermore, Plaintiff argues that the documents attached to Broyles' declaration upon which she relied consist of promotion and salary information that was not produced and thus may not be utilized in support of its motion for summary judgment.

Prior to filing its motion for summary judgment, Defendant responded to Hill's request for supplementation regarding the promotions at issue.  (Doc. 104, Ex. 8). Additionally, at her deposition, Broyles testified that due to her role, she was familiar with the work records of the managers and supervisors in her district.  (Doc. 37 at 411).

10

Broyles testified about Hill's promotions at length in her deposition. (*Id.* at 417-431). The declaration simply confirms the facts she testified about in her deposition. Accordingly, the Court declines to strike the statements.

**B.    Rossilee Patterson**

Rossilee Patterson is a former Best Buy employee who alleges: (1) failure to promote; and (2) racial discrimination based on his separation as part of the 2012 RIF.

Defendant seeks to strike paragraphs 20, 23-25, 27, 29-30, 35-36, 38-41, and 47, of Patterson's declaration, because they go beyond his personal knowledge and constitute improper opinion testimony. For the same reasons explained *infra* at Section II.C, the Court finds that Patterson's statements go beyond his personal knowledge and constitute inappropriate conclusions of fact. (*See, e.g.,* "Lifestyle Groups was racially discriminatory against African American customers."). Accordingly, the Court strikes these statements.

Next, Defendant claims that paragraphs 23-40 of Plaintiff's declaration should also be stricken because they conflict with his deposition testimony. For the same reasons explained *infra* at Section II.C, the Court finds that the LifeStyles Group testimony should not be stricken (to the extent is has not already been stricken), because these statements do not conflict with prior testimony. Defendant claims that paragraph 4 of Plaintiff's declaration should also be stricken because it conflicts with his deposition testimony. Plaintiff states that "[d]uring my exit meeting with Time Warner Cable, Time Warner Cable told me that it would classify my termination as a 'layoff' should any future employer or potential employer contact Time Warner Cable for a reference …"

(Doc. 63-2 at ¶ 4), but in his deposition, Plaintiff did not claim that he had an agreement with Time Warner – rather, he testified that he informed Best Buy that he was separated by Time Warner. (Doc. 76 at 224-225). Accordingly, the Court finds that Plaintiff's declaration and deposition testimony conflict and therefore strikes the statement.

### C. Robert Reed

Plaintiff Robert Reed is a former Best Buy employee who alleges the following claims: (1) disperate pay; (2) disperate training; (3) failure to promote; and (4) constructive discharge.

Defendant seeks to strike paragraphs 8-9, 11, 13-14, 19-20, and 22-24 of Reed's declaration, because they allegedly constitute inappropriate opinion testimony. These paragraphs address Plaintiff's belief that Lifestyle Groups are evidence of discrimination. Defendant argues that Plaintiff's conclusory statements of discrimination and retaliation should be excluded because they go to the ultimate issue in this case and are not helpful to the jury. *Harrah's Entm't, Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004) ("It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment."). For example, in *Ellis v. Houston*, No. 87:10cv3222, 2012 U.S. Dist. LEXIS 58447 (D. Neb. Apr. 26, 2012), the court noted:

> The defendants object to this and several other paragraphs of the plaintiffs' statement on the ground that they "contain legal conclusions"… At the summary judgment stage, the court should "consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact."…Ms. Blankenship's opinion that the plaintiffs "were retaliated against" is an

inadmissible legal conclusion. Her statements that the plaintiffs' "working conditions got worse" and that they "were treated differently" are not legal conclusions, and with a factual foundation laid could be admissible under Federal Rule of Evidence 701 (permitting lay witness opinion testimony which is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue"). However, the statements are still conclusory and, by themselves, are not sufficient to create a genuine issue of material fact…

*Id.* at fn 22.

Here, the Court finds that Reed's statements go beyond his personal knowledge and constitute inappropriate conclusions of fact. (*See, e.g.,* "Lifestyle Groups had a racially disparate impact on Best Buy customers," and "Lifestyle Groups was racially discriminatory against African American customers."). Accordingly, the Court strikes these statements.

Next, Defendant claims that paragraphs 8-24 of Plaintiff's declaration should also be stricken because they conflict with his deposition testimony. Specifically, Defendant argues that Plaintiff's Amended Complaint does not address Lifestyle Groups, his charge of discrimination does not mention the Lifestyle Groups, and he never complained about the Lifestyle Groups. (Doc. 77 at 103-104 and Exs. 1, 5). However, the Amended Complaint alleges that "[d]uring the period of time in which Plaintiff was employed, he was exposed to the culture at Best Buy which is identified as Life Style Groups. Life Style Groups is a stereotype segmentation that is used by Best Buy that is discriminatory toward African Americans." (Doc. 19 at ¶ 14). Accordingly, the Court declines to strike these statements (to the extent they are not already stricken), because they do not conflict with prior testimony.

13

During his deposition, Plaintiff referenced three positions he wanted during his employment. (Doc. 77 at 126-127). Plaintiff admits that he did not formally apply for any of the positions. (*Id.* at 179-180). The three positions at issue were: (1) Magnolia Brand Manager (*Id.* at 127); (2) General Manager in Fairfield (*Id.* at 133); and (3) 2011 General Manager at Tri-County (*Id.* at 130). Defendant argues that Plaintiff never testified about the 2012 General Manager position at Tri-County, a position he mentions in his declaration. (Doc. 64-2 at ¶¶ 36-37). However, Plaintiff maintains that he misstated that the Tri-County promotion was in 2011, when it was actually in 2012. (*Id.* at 129-130). Accordingly, the Court declines to strike these statements.

In his declaration, Plaintiff alleges that "[u]pon taking over at Tri-County, Reynolds immediately shuffled the management structure at the store." (Doc. 64-2 at ¶ 38). Defendant argues that the management reorganization did not take place until after the July 2012 company-wide reorganization, but Reynolds began his tenure as the General Manager for Tri-County in April 2012, so the "shuffling" did not occur immediately. (Doc. 64-2 at ¶ 35; 77 at 64). Plaintiff stipulates to the dates cited by Defendant (the change did not happen immediately), but further contends that Reynolds' decision to implement a major shuffle of the management structure after only two or three months at the store may be accurately phrased as "immediate." Considering these explanations, the Court finds that stating Reynolds actions were "immediate" is an improper characterization of the facts, and therefore strikes this statement.

In his declaration, Plaintiff alleges that "[a]fter only one month as CBG Manager, Reynolds placed me on a Performance Improvement Plan." (Doc. 64-2 at ¶ 47).

14

However, in his deposition, Plaintiff admitted that he was never placed on a PIP during his employment with Best Buy. (Doc. 77 at 171). Plaintiff testified that he became aware that Reynolds was *going* to place him on a PIP, but he transferred to Kansas before Reynolds could do that. (*Id.* at 120, Ex. 3). Plaintiff argues that the fact that he transferred before Reynolds could place him on a PIP does not change the effect of the PIP – specifically that it forced Plaintiff to transfer from the store. Regardless, Plaintiff's declaration that he was *actually* placed on a PIP clearly contradicts his deposition testimony. Accordingly, the Court strikes this statement.

In his declaration, Plaintiff alleges that "[a]fter being placed on the PIP, I believed I was in danger of losing my position if I remained at Tri-County." (Doc. 64-2 at ¶ 50). Again, in his deposition, Plaintiff admitted that he was never placed on a PIP. (Doc. 77 at 171). Therefore, Plaintiff's declaration clearly contradicts his deposition testimony. Accordingly, the Court strikes this statement.

In his declaration, Plaintiff alleges that "[u]pon arriving in Kansas, I discovered that everyone in the store knew about this lawsuit … I was upset and confused, as the disclosure of this discrimination lawsuit was a violation of Best Buy's Code of Ethics … [and] I felt isolated as a result of the disclosure of this discrimination lawsuit to the employees in Kansas." (Doc. 64-2 at ¶¶ 53-54, 59). Plaintiff never testified at his deposition about employees in Kansas knowing about this lawsuit. However, the declaration does not contradict Plaintiff's previous deposition testimony, and therefore the Court declines to strike the same.

15

In his declaration, Plaintiff alleges that "I was subjected to the embarrassment of having District Manager Jim Slough, wipe off and wash his hands immediately after shaking hands with myself and any other African American employees." (Doc. 64-2 at ¶ 63). Defendant argues that Plaintiff did not testify about this incident in his deposition. However, Plaintiff's testimony regarding the incident with Jim Slough does not contradict his prior deposition testimony, because during his deposition, he was asked whether anyone had ever made any "race-based comments" or "racial slur[s]." (Doc. 77 at 111-112, 115, Ex. 3). The incident with Jim Slough did not include a race-based comment or racial slur, and therefore it does not contradict Reed's deposition testimony. Accordingly, the Court declines to strike this statement.

### D. Chonda Betts

Chonda Betts is a Best Buy employee who asserts claims for: (1) disparate pay; (2) disparate training; and (3) failure to promote.

Defendant seeks to strike paragraphs 30-31 and 33-41of Betts's declaration, because they constitute inappropriate opinion testimony. For the same reasons explained at Section II.C, the Court finds that Betts's statements go beyond her personal knowledge and constitute inappropriate conclusions of fact. (*See, e.g.,* "Best Buy's treatment of its customers is an accurate reflection of the company's willingness to accept and further discriminatory behavior."). Accordingly, the Court strikes these statements.

Next, Defendant claims that paragraphs 30-31 and 33-41 conflict with Plaintiff's deposition testimony because Plaintiff never submitted a complaint regarding the Lifestyle Group Sales Training Program and her charge of discrimination and allegations

in the amended complaint do not address the Lifestyle Group Sales Training Program. For the same reasons explained at Section II.C, the Court declines to strike these statements (to the extent they have not already been stricken), because they do not conflict with prior testimony.

Plaintiff's declaration contains numerous allegations regarding training that allegedly contradict her deposition testimony. (Doc. 60-2 at ¶¶ 4-7). For example, Plaintiff alleges that "[a]ll of [her] General Managers denied [her] requests for training." (*Id.* at ¶ 4). However, she admitted in her deposition that she did not even request some of the training that she alleges she was denied. For example, Plaintiff testified that she never made a formal request to attend assistant manager training. (Doc. 87 at 102-103). Plaintiff also alleges that she was denied the opportunity to shadow at a "winning store," and further alleges that shadowing is "a very useful training tool and great for enhancing your ability to be promoted." (Doc. 60-2 at ¶ 5). However, at her deposition, Plaintiff could only recall one supervisor who was sent to shadow prior to 2009 and testified that when she asked to shadow in 2011, she was informed by her General Manager that there were no funds in the budget to permit any shadowing. (Doc. 87 at 107-108, 110). As to assistant manager training, Plaintiff admits that she has never made a formal request to attend such training (*Id.* at 102-103); doesn't know if this type of training still exists (*Id.* at 106); recalls that one former Tri-County supervisor was sent to shadow prior to 2009 (*Id.* at 107-108); and requested to shadow in 2011, but was told by her General Manager that the store did not have funds in its budget to permit the shadowing (*Id.* at 110). Moreover, Plaintiff admitted that she *had* received extensive training since 2009. (*Id.* at

101). Accordingly, the Court finds that Plaintiff's declaration contradicts her deposition testimony and therefore strikes those portions of the declaration.

In her declaration, Plaintiff states "I have not received a promotion since I was promoted to my current supervisor position in 2008." (Doc. 60-2 at ¶ 23). However, at her deposition, Plaintiff admitted that she voluntarily elected to remain at Tri-County during the course of her employment with Best Buy. (Doc. 87 at 31) ("No. I've looked inside, but I wanted to stay at our store"). The only promotion Plaintiff applied for was the supervisor position she was awarded in 2008. (*Id.* at 67). Plaintiff was also interested in a temporary manager position that came open when her manager went on medical leave in 2010, but admits that she did not apply for the position. (*Id.* at 43). Accordingly, the Court declines to strike the statement, because it does not expressly contradict Plaintiff's deposition. However, the Court notes that while Plaintiff has not received a promotion since 2008, she also has not applied for one.

In her declaration, Plaintiff states "I have not officially applied for more positions because the positions are predetermined. I feel as if they know who they're going to put in there before they even post it." (Doc. 60-2 at ¶ 28). While Plaintiff stated in her deposition that she voluntarily elected to remain at Tri-County during the course of her employment with Best Buy (Doc. 87 at 31), this statement does not directly contradict her deposition testimony. Accordingly, the Court declines to strike the same.

### E.     Mary Bates

Mary Bates is a former Best Buy employee asserting claims for: (1) disparate pay; (2) disparate training; (3) failure to promote; (4) harassment; (5) FMLA retaliation; and (6) race discrimination in her discharge.

Defendant seeks to strike paragraphs 7, 9-10, 12-19, and 35 of Bates's declaration because they constitute inappropriate opinion testimony.  For the same reasons explained at Section II.C, the Court finds that Bates's statements go beyond her personal knowledge and constitute inappropriate conclusions of fact.  (*See, e.g.,* "During the course of my employment at Best Buy, I was subject to various forms of discriminatory atmosphere which permeated the culture in the District.").  Accordingly, the Court strikes these statements.

Next, Defendant argues that paragraphs regarding Lifestyle Groups should also be stricken because they conflict with her deposition testimony.  For the same reasons explained at Section II.C, the Court declines to strike these statements (to the extent they have already been stricken), because they do not conflict with prior testimony.

Next, Defendant maintains that paragraphs 20, 22, 25-27, and 36 should be stricken because they conflict with her deposition testimony.

In her declaration, Plaintiff states that she "never received a promotion after 2009." (Doc. 61-2 at ¶ 20).  Plaintiff was promoted to Operating Manager at Best Buy, but due to family issues asked for and was permitted to move back into her supervisor position.  (Doc. 85 at 34-35).  Plaintiff remained in this position until she sought and received a promotion to the Mobile Manager/Computer Supervisor position in 2009.  (*Id.*

at 32).  Plaintiff admits that she did not seek any other promotions over the last ten years of her employment with Best Buy.  (*Id.* at 72).  Accordingly, the Court declines to strike this statement, because while Plaintiff never sought a promotion after 2009, technically she also never received a promotion, so her declaration does not contradict her deposition testimony.

In her declaration, Plaintiff states that "Defendant denied me manager training …."  (Doc. 61-2 at ¶ 22).  Plaintiff admits that she took a large number of online training courses.  (Doc. 85 at 60-61, Ex. 3).  Additionally, she was also invited to three or four in-person training courses over the last five years of her employment.  (*Id.* at 62).  The only training course at issue in Plaintiff's deposition was "SAS" training.[4]  (*Id.* at 68).  Plaintiff claims that her deposition testimony does not directly contract the declaration, because online training courses and in-person training courses are separate and distinct from the SAS manager training she was denied.  The Court finds that Plaintiff's declaration is misleading, because it fails to state that "Defendant denied me *SAS* manager training."  Accordingly, the Court strikes the statement.

In her declaration, Plaintiff alleges that SAS Training was required for the promotions she sought.  (Doc. 61-2 at ¶¶ 25-27).  However, aside from Best Buy employees who held SAS positions, Plaintiff admits that this type of training was not provided to other employees, and that she would have been offered the training if she would have applied for and was awarded an SAS position.  (Doc. 85 at 65-68, 71).  Plaintiff's deposition testimony demonstrates that the SAS training that she was allegedly

---

[4] "SAS" training is Stand-Along-Store inventory training.

denied was only available to employees with SAS positions. Accordingly, the Court strikes Plaintiff's statement.

In her declaration, Plaintiff alleges that "[w]hite employees Eric McMillian and Jamie Stogdill made racist comments in front of other employees and referred to her hair as being full of oil and grease and they called me 'Aunt Jemima.'" (Doc. 61-2 at ¶ 36). While, in her deposition, Plaintiff claimed that she never heard any race based comments other than a race based "parody video" that she watched in 2013 (Doc. 85 at 152), she did testify about the incident during which other employees said her hair made her look like "Aunt Jemima." (*Id.* at 154). Accordingly, the Court declines to strike this statement.

### F. Larry Patterson

Larry Patterson is a former Best Buy employee who alleges the following: (1) failure to promote; (2) racial harassment; and (3) discrimination related to his 2012 separation.

First, Defendant seeks to strike paragraphs 4, 6-8, 10, 12, 18-19, and 21-24 of Patterson's declaration, because they constitute improper opinion testimony. For the same reasons explained at Section II.C, the Court finds that Patterson's statements go beyond his personal knowledge and constitute inappropriate conclusions of fact. (*See, e.g.,* "The implementation of Lifestyle Groups permeated the culture at Best Buy and furthered racially discriminatory behavior within the company."). Accordingly, the Court strikes these statements.

Next, Defendant argues that paragraphs 5-24 of Plaintiff's declaration should also be stricken because they conflict with his deposition testimony. For the same reasons

explained at Section II.C, the Court declines to strike these statements (to the extent they are not already stricken), because they do not conflict with prior testimony.

In his declaration, Plaintiff alleges that he "was denied management training by his general manager, Jim Dektas, and the District Human Resources Manager, Kelly Broyles." (Doc. 66-2 at ¶ 25). However, Plaintiff testified that he was invited to attend a General Manager training course designed to assist managers move into General Manager positions. (Doc. 78 at 68-69). Accordingly, Plaintiff's declaration contradicts his deposition testimony and therefore the Court strikes the statement.

In his declaration, Plaintiff states that he "was told [he] had to sign [the release] before leaving the appeal room." (Doc. 66-2 at ¶ 44).[5] He argues that no one explained the release to him and that he was told to sign it before leaving the appeal room. However, in his deposition, Plaintiff verified that the peer review panel upheld his appeal on May 11, 2012, and he did not sign the release until May 14, 2012. (Doc. 78 at 124-128, Ex. 18). Plaintiff argues that while he confirmed that he signed the release on May 14, 2012, he never confirmed that the appeal panel upheld the appeal on May 11, 2012. (*Id.* at 124-128). Accordingly, the Court declines to strike the statement.

In his deposition, Plaintiff states that "[o]n multiple occasions, I was subjected to the embarrassment of District Manager Jim Slough, who is white, wiping off or washing his hands immediately after shaking hands with me and other African American employees." (Doc. 66-2 at ¶ 51). However, in his deposition, Plaintiff stated that Slough

---

[5] Plaintiff appealed his termination and won. He was instructed to sign a waiver/release in order to complete the appeal and reinstatement process.

rubbed his hands after shaking his and Reed's hands on the day he met both of them.
(Doc. 78 at 57-59). Plaintiff did not say anything about Slough washing his hands or this
allegedly occurring on any other day. (*Id.* at 57-59). Accordingly, the Court finds that
Plaintiff's characterization of Jim Slough "washing his hands on multiple occasions"
after shaking his hand contradicts his deposition testimony. Accordingly, the Court
strikes that portion of the statement.

### G. William Marcussen

William Marcussen is a former, part-time employee at Best Buy. Plaintiffs have
opposed Best Buy's dispositive motions, in part, based on Marcussen's deposition
testimony. Plaintiffs allege that Marcussen's testimony is "circumstantial evidence" of
pretext. Defendant seeks to strike Marcussen's testimony because is based on hearsay.

In March 2012, Marcussen was hired by Best Buy for a part-time position at Tri-
County. (Doc. 50 at 30). Marcussen remained employed with Best Buy until December
2013, when he voluntarily resigned from his employment. (*Id.* at 30). Due to a
workplace injury, Marcussen was off work for almost a year – from August 2012 through
August 2013 on a medical leave of absence. (*Id.* at 30). His part-time position was Asset
Protection Specialist. (*Id.* at 30). In this position, Marcussen described his duties as
standing at the front door of Tri-County and checking customer receipts. (*Id.* at 31).
Three to four other Best Buy employees held similar positions at Tri-County. (*Id.* at 35).

Marcusson talked regularly with his co-workers while standing at the front doors
performing his duties. (Doc. 50 at 54). These co-worker discussions are considered by
Marcussen to be his "investigation." (*Id.* at 53, 89). The "investigation" took place

between March and August 2012.  (*Id.*)  Marcussen admits that the investigation did not extend beyond him standing at Best Buy's front doors and talking with co-workers.  (*Id.* at 54).  For example, employees reported issues to Marcussen relating to Aaron Reagan, an Assistant Manager at Tri-County.  (*Id.* at 64).  Marcussen never witnessed any of Reagan's alleged misconduct.  (*Id.*)  Marcussen similarly heard "secondhand information" regarding Steve Reynolds, the Tri-County General Manager.  (*Id.* at 69).  Despite talking with Tri-County employees everyday about their complaints, Marcussen admits that he never heard any race-based comments.  (*Id*. at 71).

In May or June 2012, Marcussen complained to Best Buy about what he had heard from his co-workers.  (Doc. 50 at 78).  On August 4, 2012, Marcussen received a call from Best Buy about the company looking into his complaint.  (*Id.* at 111).  Marcussen requested to be paid for his "investigation" to avoid Aaron Reagan claiming that Marcussen was not performing his assigned duties while he was speaking with his co-workers.  (*Id.* at 85-86).

Marcussen admits that the documents and information he provided to Best Buy were "secondhand from others."  (Doc. 50 at 137-138).  In fact, most of the events detailed in his file happened "long before" Marcussen arrived at the store in 2012.  (*Id.* at 149).  As to employment decisions, Marcussen admits that he "was not privy to what management did behind closed doors and why they made the decision that they made." (*Id.* at 150).  In fact, Marcussen admits that he has no relevant knowledge relating to Plaintiffs Chonda Betts, Larry Patterson, Ronnie Hill, and Mary Bates.  (*Id.* at 175-177).

Accordingly, Marcussen's testimony is not admissible lay witness opinion because it is not rationally based on his perception. *See, e.g., Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (a summary judgment opponent is obliged to "make her case with a showing of facts that can be established by evidence that will be admissible at trial."); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence…must be disregarded.'"). Therefore, the Court strikes Marcussen's declaration.

### H.    Jerome Zoeller

Jerome Zoeller is a former Best Buy employee. Zoeller voluntarily resigned from his employment to seek other employment more than one year before this lawsuit was filed on September 4, 2011. Plaintiffs opposed Defendant's motions for summary judgment, based, in part, on a declaration signed by Zoeller. However, none of the Plaintiffs testified to any facts or allegations relating to Zoeller in their depositions. Defendant argues that Zoeller's declaration should be stricken because: (1) he has no personal knowledge of the issues; and (2) provides inappropriate opinion testimony in the form of conclusions of law. In response, Plaintiffs vaguely argue that the testimony contained in the declaration is based on Zoeller's personal knowledge and contains specific facts to support the testimony.

Specifically, Defendant argues that paragraphs 4 -10 are unsubstantiated personal opinions, not established by specific facts, and should be stricken.

Paragraph 4 is a conclusory statement that the declarant observed "a pattern of racial discrimination against the African American employees in the store." (Doc. 60-4 at ¶ 4). This assertion is not based on any specific facts.

Paragraph 5 asserts that "it became obvious to me that the African American employees were held to a different standard than the white employees at the store." (Doc. 60-4 at ¶ 5). This assertion is unsupported by specific facts.

Paragraph 6 notes a pattern of white managers and African American managers being treated differently, but contains no specific instances of African American managers either being questioned or disciplined. (Doc. 60-4 at ¶ 6).

Paragraph 7 seeks to establish broad discrimination across multiple Best Buy stores, but is neither supported by specific facts nor based on personal knowledge. (Doc. 60-4 at ¶ 7).

Paragraph 8 contains specific facts about an audit, but it is unclear how Mr. Zoeller knew that Ms. Broyles allegedly contacted only white managers. (Doc. 60-4 at ¶ 8). This information appears to be based on hearsay.

Paragraphs 9 and 10 are not based on specific facts or personal experience and are likely hearsay. (Doc. 60-4 at ¶¶ 9-10).

When Zoeller resigned in 2011, he held a non-exempt position with Best Buy. (Doc. 112, Ex. B at ¶ 8). In this position, Zoeller was not involved in any of the promotion decisions involving any of the Plaintiffs and he did not have access to the promotion files. (*Id.* at ¶ 9). Similarly, he did not have access to the performance evaluation of Best Buy's management employees. (*Id.* at ¶ 12). While Zoeller may have

participated in the audit process at Tri-County for training and development purposes, he did not participate in the audits conducted at stores other than Tri-County and would not have had access to non-Tri-County audit information. (*Id.* at ¶ 10). However, Zoeller seeks to testify regarding Best Buy's supervisor and manager promotions practices. (*Id.* at ¶ 5). Similarly, despite the fact that he only worked in one Best Buy store, Zoeller seeks to provide opinions on entire Best Buy districts (*Id.* at ¶ 7). Finally, Zoeller claims that audit files were manipulated and that African American "managers and supervisors" were rated lower than white employees on their performance evaluations. (*Id.* at ¶ 10). None of these opinions are supported by any factual foundation, nor did Zoeller have access to any of the employment information his declaration addresses.

Even if Zoeller had personal knowledge of the issues he addresses in his declaration, to be admissible, opinion testimony must be "helpful to the trier of fact." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). "A lay witness's opinion testimony as to an ultimate issue will 'seldom' meet this test because 'the jury's opinion is as good as the witness'[es].'" *Jebdek v, Kicak 17-A United Food & Commercial Workers*, 512 F. App'x 472, 480 (6th Cir. 2013). Accordingly, the Court strikes paragraphs 4-10 of Zoeller's declaration.

### III. CONCLUSION

Accordingly, for these reasons, the motions to strike (Docs. 65, 90, 91, 92, 93, 94, 95, and 96) are **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

**IT IS SO ORDERED**.

Date:  1/20/15                                                          */s/ Timothy S. Black*
                                                                       Timothy S. Black
                                                                       United States District Judge