UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSSILLEE PATTERSON, *et al.*, | : | Case No. 1:13-cv-49 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BEST BUY CO., INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFF LARRY PATTERSON (Doc. 38)**

This civil action is before the Court on Defendant's motion for summary judgment on all claims asserted by Larry Patterson (Doc. 38) and the parties' responsive memoranda (Docs. 66, 100).

## I.  BACKGROUND

Plaintiff is African American and a former Customer Solutions Manager at Best Buy.  Plaintiff began his employment with Best Buy in 2003 and resigned in July 2012.  Plaintiff was employed by Best Buy for nine years before he voluntarily resigned to accept a higher paying job with another retailer.  Plaintiff alleges that Best Buy discriminated against him on the basis of race by failing to provide appropriate training, failure to promote, improper termination, and harassment.

## II. UNDISPUTED FACTS[1]

1. Best Buy is a well-known consumer electronics retailer with stores located throughout the United States.  (Doc. 38-2 at ¶ 2).

---
[1]  *See* Docs. 38-1 and 66-1.

2. In Greater Cincinnati, Best Buy currently operates five retail locations.  (Doc. 38-2 at ¶ 2).

3. At the time of Plaintiff's voluntary resignation in 2012, Plaintiff was employed at Best Buy Store Number 1474 located on Colerain Avenue in Cincinnati, Ohio.  (Doc. 78, Ex. 5).

4. Plaintiff began his employment with Best Buy in 2003.  (Doc. 78, Exs. 7-11).

5. At that time, Plaintiff confirmed receipt of Best Buy's handbook and knowledge of Best Buy's harassment and discrimination policies.  (Doc. 78 at 107-108, Ex. 11).

6. Thereafter, during his nine subsequent years of employment, Plaintiff admits receiving copies of Best Buy's policies relating to discrimination, harassment, retaliation and complaint procedures.  (Doc. 78 at 109, Ex. 12).

7. During his employment, Best Buy's records reflect that Plaintiff made numerous calls to the HR Support Center.  (Doc. 78 at 51-52, Ex. 4).

8. Plaintiff also had access to a human resources professional located in Cincinnati.  (Doc. 78 at 52).

9. Plaintiff contacted the human resources professional on at least two occasions during his employment with Best Buy.  (Doc. 78 at 46-47, 53-54).

10. Plaintiff began his long employment with Best Buy on September 6, 2003.  (Doc. 78, Ex. 7).

11. At that time, Plaintiff was still attending college and he was a part-time Best Buy employee.  (Doc. 78 at 41).

12. Plaintiff's initial rate of pay with Best Buy was $7.50.  (Doc. 78, Ex. 7).

13. With the change in hours, Plaintiff received a pay increase to $9.49 an hour.  (Doc. 78, Ex. 7).

14. Plaintiff was promoted to a Senior position on December 19, 2004.  (Doc. 38-2 at ¶ 5).

15. At that time, Plaintiff's hourly rate was increased to $11.50.  (Doc. 38-2 at ¶ 5).

16. Plaintiff recalls his District Manager reaching out to him early in his employment to let him know that Best Buy was seeking to promote him into the supervisor ranks.  (Doc. 78 at 33).

17. Thereafter, Plaintiff was promoted to a supervisory position in 2007.  (Doc. 78 at 34, Ex. 7).

18. In this position, Plaintiff's rate of pay increased to $17.00 an hour.  (Doc. 78, Ex. 7).

19. In 2008, Plaintiff was promoted to a manager position at Best Buy Store 161 located in Florence, Kentucky.  (Doc. 78, Ex. 7).

20. In this position, Plaintiff received a pay increase to $18.00 an hour.  (Doc. 78, Ex. 7).

21. Plaintiff's last position with Best Buy was Manager Customer Solutions.  (Doc. 78, Ex. 8).

22. At the time of his resignation, Plaintiff was earning $52,464 a year in annual salary.  (Doc. 38-2 at ¶ 8).

23. During his employment with Best Buy, Best Buy records reflect that Plaintiff was promoted on fourteen occasions.  (Doc. 38-2 at ¶ 5).

24. Over this nine year period of employment, Plaintiff's pay rate was increased by Best Buy on eighteen occasions.  (Doc. 38-2 at ¶ 5).

25. These eighteen pay increases included four merit increases.  (Doc. 38-2 at ¶ 5).

26. Best Buy offers in person and online training.  (Doc. 38-2 at ¶ 6).

27. Employees are paid two hours per month in order to permit their attendance for monthly online training.  (Doc. 38-2 at ¶ 6).

28. Plaintiff's online training course completion schedule is lengthy and addresses a wide range of topics.  (Doc. 78, Ex. 13).

29. In addition to this online training. Plaintiff was also invited to attend a General Manager training course designed to assign managers to move into General Manger positions.  (Doc. 78 at 68-69).

30. Plaintiff voluntarily resigned from his employment with Best Buy in July 2012 to accept a higher paying position with another retailer.  (Doc. 78 at 73, Ex. 8).

31. Plaintiff admits that he was not denied any promotions after 2007 when he was promoted to a supervisor position.  (Doc. 78 at 34-35).

32. Plaintiff recalls two occasions when he heard racial comments in the workplace.  (Doc. 78 at 43-49).

33. On the first occasion, after one of Plaintiff's promotions that included a change in store locations, Plaintiff heard rumors that two employees joked that the store would be eating more chicken and watermelon after Plaintiff accepted a promotion and was transferring into the store.  (Doc. 78 at 43-44).

34. Plaintiff did not hear the employees make the comments.  (Doc. 78 at 45).

35. Plaintiff admits the General Manager and Human Resources took the issue seriously and investigated the allegation.  (Doc. 78 at 46-47).

36. On the second occasion, Plaintiff alleges that after a General Manager turned out the lights in a room for a presentation, he said, "Larry, where did you go?" (Doc. 78 at 48-49).

37. Plaintiff reported this comment to human resources and he was told by human resources that the comment would be addressed.  (Doc. 78 at 53-54).

38. In 2012, Plaintiff was discharged for improper sales techniques.  (Doc. 78, Ex. 17).

39. Best Buy , however, offers employees a peer review panel that permits employees to elect to appeal discharge decisions through a jury of Best Buy peers.  (Doc. 78, Ex. 18).

40. Plaintiff elected this process and he submitted his appeal on April 21, 2012.  (Doc. 78, Ex. 6; Doc. 38-2 at ¶ 7).

41. On May 11, 2012, the peer review panel reinstated Plaintiff.  (Doc. 78, Ex. 18;

    Doc. 38-2 at ¶ 7).

42. The process required, as a condition of returning to his employment, that Plaintiff execute a release of claims. (Doc. 78 at 127-128, Ex. 18; Doc. 38-2 at ¶ 7).

43. The document executed by Plaintiff released Best Buy "from all claims or damages arising from the acts, incidents, or occurrences that were raised in my appeal." (Doc. 78, Ex, 18).

44. Plaintiff's Peer Review Confidential Appeal Form requested that Best Buy return Plaintiff to a different store. (Doc. 78, Ex. 6).

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.   ANALYSIS

### A.   Racial Discrimination

Plaintiff alleges a claim of race discrimination arising out of his 2012 discharge. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of…race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In a Title VII case, a plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against him.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Unlawful discrimination does not have to be the only reason for an adverse employment action to violate Title VII, but rather must be an essential component of an employer's mixed motive.  A plaintiff may carry the burden by introducing direct evidence, which shows that in treating a plaintiff adversely the defendant was motivated by discriminatory intent, or by introducing circumstantial evidence that supports an inference of discrimination.  *Logan v. Denny's Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Plaintiff fails to present direct or circumstantial evidence that supports an inference of discrimination.  (*See* Doc. 121).  Accordingly, to prove a *prima facie* case of race discrimination, Plaintiff must prove: (1) that she is a member of a protected group; (2) that she was subject to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside of the protected class or

that similarly situated non-protected employees were treated more favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).[2]

In 2012, Best Buy terminated Plaintiff for "inboarding," a term used to describe the process of discounting products by combining free services. (Doc. 66-2 at ¶ 38, Ex. 2). Following Plaintiff's 2012 discharge, he sought Best Buy's internal review of the discharge in lieu of litigation. (Doc. 78, Ex. 18). Best Buy admitted that Plaintiff was improperly terminated, acknowledging "inconsistencies with how the policy regarding discounting/inboarding is being applied at your location." (Doc. 66-2, Ex. 18). As a condition of Plaintiff's return to work, he was required to sign a release. (*Id.* at 127-128, Ex. 18). The document executed by Plaintiff released Best Buy "from all claims or damages arising from the acts, incidents, or occurrences that were raised in my appeal." (*Id.*, Ex. 18). Plaintiff claims that Best Buy did not give him an opportunity to provide the release to an attorney for review and that he received no additional consideration for signing the release. (Doc. 66-2 at ¶ 45, Ex. 2).

As part of his reinstatement, Plaintiff requested to be transferred to another store. (Doc. 66-2 at ¶ 46, Ex. 2). Plaintiff requested the transfer because he did not feel comfortable returning to Florence after having been terminated. (*Id.* at ¶ 47, Ex. 2).

---

[2] If a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant-employer "to articulate some legitimate, nondiscriminatory reason" for the employment action in question. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The ultimate burden of establishing that discrimination occurred remains with the plaintiff throughout the analysis.

7

Upon his reinstatement, Plaintiff was transferred to Best Buy's Colerain store.  (*Id.* at ¶ 48, Ex. 2).  Upon arriving at the Colerain store, Krystal Konn, the General Manager at Colerain, told Plaintiff that his "brand was dead."  (*Id.* at ¶ 49, Ex. 2).  After Konn's comment, Plaintiff resigned, because he thought his career at Best Buy was ruined.  (*Id.* at ¶ 50, Ex. 2).

Plaintiff argues that the release is not valid, and, therefore, Best Buy cannot rely on the release to establish a legitimate, nondiscriminatory reason for termination.  (Doc. 66 at 11-12).  Factors considered to determine if a release is knowing and voluntary include:

> (1) plaintiff's experience, background, and education; (2) the amount of time the Plaintiff had to consider whether to sign the waiver, including whether the Employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Sako v. Ohio Dep't of Admin. Serv.*, Case No. 07-3804, 278 F. App'x 514, 518 (6th Cir. 2008).  Plaintiff argues that the release was not valid, because he did not have enough time to review the release and that was no consideration for signing the waiver.  (Doc. 66 at 11).

First, there is no evidence that Plaintiff did not have adequate time to review or sign the waiver.  In his deposition, Plaintiff testified that the peer review panel upheld his appeal on May 11, 2012, and Plaintiff did not sign the release until May 14, 2012.  (Doc. 78 at 124-128, Ex. 18).  Moreover, Plaintiff is college educated and the release is short and clear.

Second, Plaintiff concedes that he was reinstated in exchange for signing the release. (Doc. 66 at 12). Continued employment is sufficient consideration for a release under both Ohio and federal law. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 461 (6th Cir. 2013); *Araci v. Dillard's Inc.*, Case No. 1:10cv253, 2011 U.S. Dist. LEXIS 41596 (S.D. Ohio Mar. 29, 2011) (under Ohio law, continued employment is sufficient consideration to support a waiver of rights in binding arbitration agreement).[3]

Next, Plaintiff argues that he was "already entitled to get his job back because he won the appeal." (Doc. 66 at 12). However, Best Buy offers its employees a peer review process which allows for the possibility of reinstatement *subject* to the terminated employee's execution of a release of claims. (Doc. 38-2 at ¶ 7). Plaintiff voluntarily elected to go through the peer review process and understood that the release agreement was a condition of his return to work with Best Buy. Therefore, Plaintiff's release is valid. Accordingly, even assuming Plaintiff established a *prima facie* case for race discrimination arising out of his 2012 discharge, he failed to establish pretext.

### B. Racial Harassment

In order to state a claim of racial harassment Plaintiff must show: "(1) that he 'belonged to a protected group,'; (2) that he 'was subject to unwelcome harassment,' (3) that 'the harassment was based on race,' and (4) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment,' and

---

[3] In fact, Plaintiff fails to cite any case law to support his argument that continued employment is not sufficient consideration.

9

(5) that [Best Buy] 'knew or should have known about the harassment and failed to act.'" *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 432 (6th Cir. 2014). To make this determination, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff argues that the following evidence constitutes racial harassment: (1) Jim Slough rubbing his hands off after shaking hands with African American employees (Doc. 78 at 58); (2) Jim Setkas commenting "where did Larry go?" after the lights were turned off in a room during a meeting (*Id.* at 49); and (3) Jeff Fender and Nick Engle commenting "I guess we're going to have a lot more chicken and watermelon now that he's here." (*Id.* at 43-45).

Plaintiff was employed by Best Buy for nine years. Over this nine year period, Plaintiff alleges three instances of misconduct, two of which were verbal comments. Plaintiff heard through the grapevine that two employees joked that the store would be eating more chicken and watermelon since he was working there. Plaintiff did not personally hear the employees make the comments. (Doc. 78 at 45). Plaintiff admits that the General Manager and human resources took the issue seriously and investigated the allegation. (*Id.* at 46-47). Next, Plaintiff alleges that after the General Manager turned out the lights in a room for a presentation, he said, "Larry, where did you go?" (*Id.* at 48-49). Plaintiff again notified Best Buy's human resource department and was told that

they resources would speak with the employee regarding the alleged comment. (*Id.* at 53-54). As a matter of law, these two instances of "offensive utterances" do not satisfy the severe or pervasive standard.

Furthermore, Plaintiff's allegation that the District Manager, Jim Slough, wiped his hand after shaking Plaintiff's hand is not severe enough as a matter of law. *See, e.g., Brown v. Wash. Dep't of Soc. and Health Servs.*, Case No. C05-5635, 2006 U.S. Dist. LEXIS 82018, at *5, 11-12 (W.D. Wash. Nov. 8, 2006) (plaintiff's allegation, that no one would shake her hand, among other things, fell short of the severity of conditions required to establish a hostile work environment); *Jeter v. Smi-Owen Steel, Co.*, Case No. 3:95-0001-23, 1996 U.S. Dist. LEXIS 23100 (D.S.C. Sept. 30, 1996) (plaintiff's allegations that his supervisor would not shake his hand, among other things, was insufficient evidence of pretext as a matter of law).

Accordingly, Plaintiff is unable to establish a *prima facie* case of racial harassment.[4]

### C. Failure to Promote

To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of

---

[4] Even if Plaintiff were able to establish a *prima facie* case, these incidents do not constitute probative evidence of pretext.

11

the protected class received the job at the time plaintiff's request for the promotion was denied. *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Plaintiff claims that he applied for multiple positions for which he was qualified, but Best Buy passed him over. Plaintiff argues that Best Buy promoted less experienced and less qualified similarly-situated white employees for the jobs he was seeking. (Doc. 78 at 37-40). In 2005, Plaintiff twice applied for the Home Theater position at the Western Hills store. (*Id.* at 39). However, on both occasions Best Buy awarded the positions to white employees, Matt Jones and Cort O'Neil, both with less knowledge and experience in the Home Theater department. (*Id.* at 39). In fact, after O'Neil took the position, he requested Plaintiff to train him, since Plaintiff had the knowledge and experience in the department. (Doc. 66-2 at ¶ 35, Ex. 2). Plaintiff also applied for the Digital Imaging Supervisor position. (Doc. 78 at 37). However, Best Buy awarded the position to Dan Markarian, who is white. (*Id.*)

The promotions at issue all took place prior to September 2007. (Doc. 66-2 at ¶¶ 28-35). Two of the promotions took place in 2005. (*Id.* at ¶ 28). These promotion decisions are time-barred under federal and state law. Plaintiff brought his failure to promote claims pursuant to 42 U.S.C. § 1981 and the Ohio Revised Code. (Doc. 19 at ¶¶ 34-35). Plaintiff's Section 1981 claim is subject to Ohio's two-year personal injury statute of limitations set forth in Ohio Rev. Code § 2305.10. *Moore v. Potter*, 47 F. App'x 318, 320 (6th Cir. 2002). Plaintiff's state discrimination claims are subject to a six-year statute of limitations. *Gentry v. Renal Network*, 636 F. Supp. 2d 614, 617 (N.D.

12

Ohio 2009).  Accordingly, Plaintiff's claims based on these promotions are time-barred, as he filed his complaint on January 23, 2013 – more than eight years after the promotion decisions.

The remaining promotion has no date, store, decision maker, or a statement regarding whether Plaintiff even applied for the position.  (Doc. 66-2 at ¶¶ 29-35).  Aside from being time-barred, Plaintiff has simply failed to prove a *prima facie* case for failure to promote.  *See, e.g., Rosettus Weeks v. State of Michigan Dept. of Cmty. Health*, Case No. 13-2391, 2014 U.S. App. LEXIS 18998, at *14-15 (6th Cir. 2014).

### D. Failure to Train

To state a claim for failure to train, Plaintiff must allege that he was treated less favorably than any other similarly situated employee, or was otherwise denied training opportunities because of his race.  Training is not considered an actionable adverse action unless it results in a "deprivation of increased compensation as the result" of the failure to train.  *Reed,* 556 F. App'x at 429-430.  *See also Vaughn v. Louisville Water Co.*, 302 F. App'x 337 (6th Cir. 2008) (plaintiff's training claim failed because the plaintiff "failed to present any evidence that she was passed up for promotions because of her inability to attend the…training.").

Plaintiff alleges that he requested management training in order to progress his career at Best Buy, but his General Manager, Jim Detkas, and the District Human Resources Manager, Kelly Broyles, denied him the opportunity.  (*Id.* at 68-69).  However, Plaintiff *was* actually invited to attend a General Manager training course

13

designed to assist managers to move into General Manager positions. (Doc. 78 at 68-69).[5] Accordingly, Plaintiff fails to state a *prima facie* case for failure to train.

## V. CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment on all claims asserted by Larry Patterson (Doc. 38) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon all claims of Plaintiff Larry Patterson are **TERMINATED** in this Court.

**IT IS SO ORDERED**.

Date: 1/20/2015  *s/ Timothy S. Black*
Timothy S. Black
United States District Judge

---

[5] Additionally, Plaintiff's online training course completion schedule is lengthy and addresses a wide range of topics. (Doc. 78, Ex. 13).