UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSSILLEE PATTERSON, *et al.*, | : | Case No. 1:13-cv-49 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| BEST BUY CO., INC., | : | |
| Defendant. | : | |

# ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFF RONNIE HILL (Doc. 39)

This civil action is before the Court on Defendant's motion for summary judgment on all claims asserted by Ronnie Hill (Doc. 39) and the parties' responsive memoranda (Docs. 62, 103).

## I. BACKGROUND

Plaintiff is African American and a former Magnolia Home Theatre System Designer at Best Buy. In 2014, after nearly nine years of employment, Plaintiff initiated this lawsuit.[1] Plaintiff alleges that Best Buy discriminated against him on the basis of race, claiming failure to promote and harassment.

## II. UNDISPUTED FACTS[2]

1. Best Buy is a well-known consumer electronics retailer with stores located throughout the United States. (Doc. 39, Ex. 2 at ¶ 2).

---

[1] Plaintiff recently resigned from his employment with Best Buy to accept employment with another company. There are no claims arising out of the resignation.

[2] *See* Doc. 39, Ex. 1 and 62, Ex. 1.

2. In Greater Cincinnati, Best Buy currently operates five retail locations. (Doc. 39, Ex. 2 at ¶ 2).

3. During his Best Buy career, Plaintiff worked for Best Buy in Georgia and Ohio. (Doc. 79, Ex. 2).

4. Since 2010, Plaintiff's role is a district-wide role and Plaintiff is not assigned to one single Best Buy store. (Doc. 79 at 27 and 32).

5. Plaintiff began his employment with Best Buy in 2005. (Doc. 79, Ex. 3).

6. At the time of his hire, Plaintiff confirmed that he received a copy of Best Buy's handbook. (Doc. 79, Ex. 3).

7. Plaintiff's new hire documentation also set forth Best Buy's anti-discrimination and anti-harassment policies. (Doc. 79, Ex. 3).

8. Thereafter, Plaintiff admits that the policies are available to him online and posted in the break room of Best Buy stores. (Doc. 79 at 49, Exs. 4-5).

9. Plaintiff also admits that he is familiar with Best Buy's complaint procedures. (Doc. 79 at 49-50, Exs. 4-5).

10. Plaintiff admits that he utilized the Best Buy hotline number during his employment. (Doc. 79 at 50-51).

11. Relevant to this Motion, Plaintiff admits that he never called the hotline to report discrimination or harassment toward himself or other Best Buy employees. (Doc. 79 at 54-55).

12. Plaintiff also admits that he never raised discrimination or harassment with Best Buy's human resources department independent of the hotline

13. However, Plaintiff does recall informing one Best Buy General Manager, in 2012, that he felt he was not getting promotions due to his race. (Doc. 79 at 56-57).

14. Consistent with his lack of complaints, Plaintiff admits that he was never the victim of retaliation during his employment with Best Buy. (Doc. 79 at 66).

15. Plaintiff admits that no Best Buy manager or supervisor ever used any racial slurs in his presence. (Doc. 79 at 63-65).

16. However, Plaintiff recalls his co-workers making jokes about how he is the "token" because he is the only black employee in his department.  (Doc. 79 at 63-65).

17. Plaintiff was hired by Best Buy in November 2005.  (Doc. 79, Ex. 3).

18. Plaintiff's employment with Best Buy started as a part-time sales specialist in Ohio at Best Buy Store 153 located on East Kemper Road (hereinafter "Tri-County").  (Doc. 79 at 18-19).

19. Plaintiff recalls spending seven or eight months in a part-time position.  (Doc. 79 at 18-19).

20. Plaintiff's initial rate of pay with Best Buy was $9.50 an hour.  (Doc. 39-2 at ¶ 4).

21. In 2013, Plaintiff earned $47,000.  (Doc. 79 at 20).

22. At his request, Plaintiff was permitted to transfer to Atlanta after about ten or eleven months with Best Buy.  (Doc. 79 at 30).

23. Plaintiff returned to Ohio in 2010.  (Doc. 79 at 36).

24. Plaintiff's first promotion with Best Buy was a full-time Senior position.  (Doc. 79 at 19).

25. Four months later, while in Atlanta, Plaintiff was promoted to a Customer Assistant Supervisor position with Best Buy.  (Doc. 79 at 21).

26. From 2008 until a reorganization in 2010, Plaintiff held the position of Magnolia Home Theater Sales Professional Level Four.  (Doc. 79 at 25-26).

27. When Plaintiff returned to Ohio, he accepted the position of Home Theater Sales Specialist.  (Doc. 79 at 26).

28. One month later, Plaintiff moved into a Computer Sales Specialist position.  (Doc. 79 at 26).

29. Plaintiff finally moved into a Mobile Sales Lead position and then into the position of Magnolia Home Theatre System Designer that he held since July 2010.  (Doc. 79 at 19-20 and 26-27).

30. During his long tenure with Best Buy, Plaintiff has never been suspended.  (Doc. 79 at 107).

31. In addition, Plaintiff has never been placed on a Performance Improvement Plan due to poor performance.  (Doc. 79 at 107).

32. Plaintiff admits that Best Buy offers online training to all Best Buy employees.  (Doc. 79 at 92, Ex. 11).

33. Plaintiff's training record from 2009 through 2013 is quite extensive.  (Doc. 79, Ex. 6).

34. Over this time period, Plaintiff completed at least 230 Best Buy e-learnings.  (Doc. 79, Ex. 6).

35. In addition to the e-learnings, Best Buy also sent Plaintiff to sales training in Arizona and Illinois.  (Doc. 79 at 100-101).

36. Plaintiff asked for additional system design training, but the request was denied.  (Doc. 79 at 94-95).

37. Best Buy has a formal application process for open positions.  (Doc. 79, Exs. 6-8; Doc. 39-2 at ¶ 5).

38. During his career, Plaintiff was promoted by Best Buy on multiple occasions.  (Doc. 79 at 19, 21, 23, 25).

39. Plaintiff alleges that he applied for, but was denied several additional promotions.  (Doc. 79, Ex. 16).

40. The first promotion at issue was in 2010 when Plaintiff decided to return to Ohio.  (Doc. 79 at 68).

41. The position was the Magnolia Home Theater supervisor position at Tri-County.  (Doc. 79 at 68).

42. The individual who received the promotion was Josh Holzapfel.  (Doc. 79 at 68-69; Doc. 39-2 at ¶ 7).

43. Plaintiff admits that Holzapfel was already in Tri-County, had supervisory experience and had worked in home theatre.  (Doc. 79 at 68-69).

4

44. Plaintiff also admits that the interview team included Co-Plaintiff Rossilee Patterson. (Doc. 79 at 71).

45. The Manager for the Home Theatre Department at Tri-County at the time, Stephanie Reagan, was deposed in this matter. (Doc. 39-2 at ¶ 7; Doc. 52 at 13-14).

46. Reagan recalls just being promoted to manager and she was promoted her Senior to her former supervisor position. (Doc. 52 at 13-14).

47. Reagan hired Plaintiff and thinks highly of Plaintiff (Doc. 52 at 13), but does not recall Plaintiff applying for this position (*Id.* at 13-15).

48. Holzapfel's employment history reflects that he was hired in 2004 – prior to Plaintiff – and was in the Home Theatre Department at Tri-County long before the promotion at issue. (Doc. 39-2 at ¶ 7).

49. The second position at issue was a Home Theatre Supervisor position at Best Buy's Store 161 located in Florence, Kentucky (hereinafter "Florence"). (Doc. 79 at 71-72).

50. Plaintiff recalls that he and his supervisor (white) at the time applied for the position. (Doc. 79 at 720.

51. Neither Plaintiff nor his supervisor received the promotion. (Doc. 79 at 72).

52. Rather, Tony Clark (white) was awarded the position. (Doc. 79 at 72-73; Doc. 39-2 at ¶ 8).

53. Plaintiff admits that Tony Clark had supervisory experience prior to the promotion. (Doc. 79 at 74-75).

54. In fact, Best Buy records reflect that Tony Clark was a Supervisor at Florence prior to this promotion. (Doc. 39-2 at ¶ 8).

55. Best Buy records further reflect that Tony Clark reported to Co-Plaintiff Larry Pattterson in the Home Theatre Supervisor position. (Doc. 39-2 at ¶ 8).

56. Plaintiff next applied for Mobile Manager positions in three Best Buy stores. (Doc. 79, Exs. 6-8).

5

57. At the Best Buy's Bridgewater Falls Store 617 located in Fairfield Township, Ohio (hereinafter "Bridgewater Falls"), Plaintiff recalls Brittany Cravens got the promotion.  (Doc. 79 at 75-76).

58. Best Buy's records show that five individuals applied for this position.  (Doc. 39-2 at ¶ 9).

59. Cravens was a supervisor at Bridgewater Falls prior to the promotion.  (Doc. 79 at 75).

60. However, Plaintiff believes that Cravens was selected because she was "the best friend" of the General Manager at Bridgewater Falls, April Quevedo.  (Doc. 79 at 76).

61. Best Buy records reflect that Cravens was hired around the same time as Plaintiff and she was a supervisor for five years prior to the promotion.  (Doc. 39-2 at ¶ 9).

62. The second Mobile Manager position was in Best Buy's Store 494 located in Cincinnati, Ohio (hereinafter "Fields-Ertel").  (Doc. 79 at 78).

63. Best Buy's records show that seven individuals applied for this position.  (Doc. 39-2 at ¶ 10).

64. Plaintiff admits that Quevedo was already in a management position at Fields-Ertel prior to this promotion.  (Doc. 79 at 78).

65. However, in Plaintiff's view, Quevedo received the promotion because he was married to a Best Buy General Manager.  (Doc. 79 at 78).

66. Best Buy records reflect that Quevedo was hired in 2004 and held management positions since 2005.  (Doc. 39-2 at ¶ 10).

67. The final Mobile Manager position at issue was at Tri-County.  (Doc. 79 at 79-80). Seven individuals applied for this position.  (Doc. 39-2 at ¶ 11).

68. This position was awarded to April Quevedo who moved from her former General Manager position.  (Doc. 79 at 80; Doc. 39-2 at ¶ 11).

69. Best Buy records reflect that April Quevedo was hired in 2004 as a supervisor and held a management position since 2006.  (Doc. 39-2 at ¶ 11).

70. The next promotion at issue is the Geek Squad Manager for Dayton.  (Doc. 79 at 84).

71. The final promotion at issue is the Appliances Supervisor position at Fields-Ertel in 2013.  (Doc. 79 at 115-116).

73. The final promotion at issue is the Appliances Supervisor position at Fields-Ertel in 2013.  (Doc. 79 at 115-116).

74. Best Buy's records show that fifteen individuals applied for this position.  (Doc. 39-2 at ¶ 12).

75. The individual who received this position was Raymond Freels.  (Doc. 79 at 115-116; Doc. 39-2 at ¶ 12).

76. Plaintiff admits that Raymond Freels previously worked for the General Manager at Fields-Ertel, Adam Oney, who selected Freels for the position.  (Doc. 79 at 125-129).

77. Best Buy records reflect that Raymond Freels was hired in 2005 and had previously experience working in appliances.  (Doc. 39-2 at ¶ 12).

### III.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV. ANALYSIS

#### A. Race Discrimination

First, Plaintiff alleges a claim of race discrimination. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of … race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In a Title VII case, a plaintiff bears the ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against him. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Unlawful discrimination does not have to be the only reason for an adverse employment action to violate Title VII, but rather must be an essential component of an employer's mixed motive. A plaintiff may carry the burden by introducing direct evidence, which shows that in treating a plaintiff adversely the defendant was motivated by discriminatory intent, or by introducing circumstantial evidence that supports an inference of discrimination. *Logan v. Denny's Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Plaintiff fails to present direct or circumstantial evidence that supports an inference of discrimination. (*See* Doc. 121). Accordingly, to prove a *prima facie* case of

race discrimination, Plaintiff must prove: (1) that he is a member of a protected group; (2) that he was subject to an adverse employment decision; (3) that he was qualified for the position; and (4) that he was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). Plaintiff fails to allege any facts that would establish a *prima facie* case of race discrimination. Accordingly, his claim fails as a matter of law.

### B. Racial Harassment

To establish a claim of racial harassment Plaintiff must show: "(1) that he 'belonged to a protected group,'; (2) that he 'was subject to unwelcome harassment,' (3) that 'the harassment was based on race,' and (4) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment,' and (5) that [Best Buy] 'knew or should have known about the harassment and failed to act.'" *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 432 (6th Cir. 2014). To make this determination, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

During his nine years of employment with Best Buy, Plaintiff admits that no Best Buy manager or supervisor ever used racial slurs in his presence. (Doc. 79 at 63-65). However, Plaintiff does allege that his co-workers made jokes about him being the

9

"token," because he was the only black employee in his department. (*Id*.) Still, Plaintiff cannot prove that Best Buy knew or should have known about the harassment and failed to act. In this case, there is no dispute that Plaintiff was given access to and was familiar with Best Buy's anti-discrimination policy, anti-harassment policy, and complaint procedures, but Plaintiff never complained to Best Buy's Human Resources Department regarding the alleged discrimination and harassment. (Doc. 79 at 49-50, Exs. 3-5).

As to altering his conditions of employment, Plaintiff testified that his performance was excellent and he was never placed on a PIP. (Doc. 79 at 107). There is no evidence that the alleged comments altered the conditions of Plaintiff's employment.

Finally, Plaintiff cannot prove that the harassment was severe and pervasive. Plaintiff was not assigned to one Best Buy store. Rather, his role required him to travel to many Best Buy Stores on a weekly basis and to visit with customers in their homes. Therefore, he was not in the presence of co-workers and supervisors on a daily basis. Accordingly, the Court finds that the number and type of alleged incidents does not satisfy as a matter of law the severe or pervasive standard.

### C. Failure to Promote

To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of

the protected class received the job at the time plaintiff's request for the promotion was denied. *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Plaintiff transferred to a Best Buy store in Atlanta in 2006. (Doc. 79 at 30). In 2010, Plaintiff transferred back to Ohio. (*Id.* at 36). Plaintiff's position with Best Buy after 2010 was Magnolia Home Theater System Designer. This district-wide role was not a supervisory role, but rather a skilled position dealing with Best Buy's home entertainment products and services. (*Id.* at 27, 32). Therefore, store management in Best Buy's Ohio stores had little knowledge about Plaintiff's employment background and alleged abilities to supervise employees.

During his career, Plaintiff was promoted on multiple occasions. (Doc. 79 at 19, 21, 23, 25). However, Plaintiff challenges several promotion decisions. Specifically, Plaintiff alleges that Best Buy denied him seven different promotions based on his race.[3]

### 1. *Supervisor at Tri-County*

The first promotion at issue was in 2010, when Plaintiff decided to return to Ohio. (Doc. 79 at 68). Plaintiff alleges that the individual who received the promotion, Josh Holzapfel, had "very little experience." (Doc. 62 at 7). However, Holzapfel was hired in

---

[3] Although Plaintiff briefly addresses training, he does not allege that the lack of training caused any of the promotion decisions. (Doc. 62 at 6-8). Plaintiff's training record from 2009 through 2013 is extensive. (Doc. 79, Ex. 6). Over this time period, Plaintiff completed at least 230 Best Buy e-learnings. (*Id.*) In addition to the e-learnings, Best Buy also sent Plaintiff to sales training in Arizona and Illinois. (*Id.* at 100-101). Plaintiff asked for additional system design training, but the request was denied. (*Id.* at 94-95). Plaintiff admits that system designing was not one of his job duties with Best Buy. (*Id.*) In addition, Plaintiff does not believe the lack of training negatively impacted his performance. (*Id.*) Finally, Plaintiff does not know of any best Buy employees who had received this type of training since 2010. (*Id.*)

11

2004, before Plaintiff. (Doc. 39-2 at ¶ 7). Additionally, unlike Plaintiff, Holzapfel was the lead in the department at issue prior to the promotion. (*Id.*) The lead position was designed to give the employee the experience necessary to move into the supervisory position in the department when the position became available. (*Id.*) As to Holzapfel, the position became available because his supervisor, Stephanie Reagan, was promoted from the department supervisor to the department manager. (*Id.*)

### 2. *Supervisor at Florence*

The second position at issue was a Home Theatre Supervisor position at Best Buy's Store 161 located in Florence, Kentucky. (Doc. 79 at 71-72). The position was awarded to a white employee, but Plaintiff also alleges that he was not hired due to his "lingo." (Doc. 62 at 7).

One of the white employees who also applied for the position was Plaintiff's supervisor at the time. (Doc. 79 at 72). Neither Plaintiff nor his supervisor received the promotion. (*Id.* at 73). Rather, Tony Clark (white) was awarded the position. (Doc. 79 at 72-73; Doc. 39-2 at ¶ 8).

Plaintiff admits that Tony Clark had supervisory experience prior to the promotion. (Doc. 79 at 74-75). In fact, Best Buy records reflect that Tony Clark was a Supervisor at Florence prior to this promotion. (Doc. 39-2 at ¶ 8). Best Buy records further reflect that Tony Clark reported to Co-Plaintiff Larry Patterson in the Home Theatre Supervisor position. (*Id.*) Larry Patterson, who is also African American, participated in this promotion decision. (*Id.*)

As to Plaintiff's allegation that he was not hired because of his "lingo," Plaintiff inquired after the decision as to the reasons why he was not promoted. (Doc. 79 at 73). Plaintiff was told that due to his "time in Atlanta," the management team in Florence was unfamiliar with him. (*Id.*) Additionally, Plaintiff was told that "some of the lingo [he] used was different from what [Florence] use[d] up here because [Plaintiff was] not used to being in [the Florence] area…" (*Id.*)

### 3. *Mobile Manager Position at Bridgewater Falls*

Plaintiff next applied for a Mobile Manager position at Best Buy's Bridgewater Falls Store 617 located in Fairfield Township, Ohio. (Doc. 62 at 7). Plaintiff simply alleges that a white employee, Brittany Cravens, was hired because she was "best friends" with the Bridgewater Falls' General Manager. (*Id.*)

Plaintiff's allegations fail because the documented facts confirm that Cravens was qualified for the promotion. Best Buy's records show that five individuals applied for this position. (Doc. 39-2 at ¶ 9). Cravens was a supervisor at Bridgewater Falls prior to the promotion. (Doc. 79 at 75). Best Buy records reflect that Cravens was hired around the same time as Plaintiff. and she had been a supervisor for five years prior to the promotion. (Doc. 39-2 at ¶ 9).

### 4. *Mobile Manager at Fields-Ertel*

The fourth position at issue is the Mobile Manager position in Best Buy's Store 494 in Cincinnati ("Fields-Ertel"). (Doc. 62 at 7; Doc. 79 at 78). Plaintiff alleges that a Hispanic employee, Marvin Quevedo, was awarded the position. (Doc. 62 at 7-8).

Plaintiff alleges that Quevedo was a poor performer at the time of the promotion. (*Id.* at 7-8).

Best Buy's records show that seven individuals applied for the position. (Doc. 39-2 at ¶ 10). Quevedo was already in a management position at Fields-Ertel prior to this promotion. (Doc. 79 at 78). Best Buy records reflect that Quevedo was hired in 2004 and had held management positions since 2005. (Doc. 39-2 at ¶ 10). As to his performance, as of the date of the promotion, Quevedo was a top performer in the district. (*Id.*)

### 5. *Mobile Manager at Tri-County*

The fifth position at issue is the Mobile Manager position in Tri-County. (Doc. 62 at 8; Doc. 79 at 79-80). Plaintiff alleges that the female awarded the position, April Quevedo, was a poor performer. (Doc. 62 at 8).

Seven individuals applied for this position. (Doc. 39-2 at ¶ 11). This position was awarded to April Quevedo who moved from her former General Manger position. (Doc. 79 at 80; Doc. 39-2 at ¶ 11). Quevedo voluntarily stepped down from her General Manager position due to family issues and her desire for more of a work/life balance. (Doc. 39-2 at ¶ 11). Best Buy records reflect that April Quevedo was hired in 2004 as a supervisor and had held management positions since 2006. (*Id.*)

### 6. *Geek Squad Manager*

Next, Plaintiff claims that he was interested in a position as Geek Squad Manger for Dayton. (Doc. 79 at 84). However, Plaintiff ultimately elected not to apply. (Doc. 79 at 84-85; Doc. 62 at 8).

### 7. *Appliances Supervisor*

The final promotion at issue is the Appliances Supervisor position at Fields-Ertel in 2013. (Doc. 79 at 115-116). Best Buy's records show that fifteen individuals applied for this position. (Doc. 39-2 at ¶ 12). The individual who received this promotion was Raymond Freels. (Doc. 79 at 115-116; Doc. 39-2 at ¶ 12). Plaintiff admits that Freels previously worked for the General Manager at Fields-Ertel, Adam Oney, who selected Freels for the position. (Doc. 79 at 125-129). Best Buy records reflect that Freels was hired in 2005 and had previous experience working in appliances. (Doc. 39-2 at ¶ 12).

Accordingly, Plaintiff is unable to state a *prima facie* case of discrimination based on a failure to promote with respect to any of the seven promotions. Plaintiff simply failed to allege sufficient facts to establish that he had "similar qualifications" to those who received the promotions.

## V. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment on all claims asserted by Ronnie Hill (Doc. 39) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon all claims of Plaintiff Ronnie Hill are **TERMINATED** in this Court.

**IT IS SO ORDERED**.

Date: 1/20/15                                          *s/ Timothy S. Black*
                                                       Timothy S. Black
                                                       United States District Judge