UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSSILLEE PATTERSON, *et al*., | : | Case No. 1:13-cv-49 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BEST BUY CO., INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS ASSERTED BY PLAINTIFF MARY BATES (Doc. 40)**

This civil action is before the Court on Defendant's motion for summary judgment

on all claims asserted by Mary Bates (Doc. 40) and the parties' responsive memoranda

(Docs. 61, 102).

## I. BACKGROUND

Plaintiff is African American and a former Mobile Manager/Computer Supervisor

at Best Buy. In 2013, after nearly eighteen years of employment, Plaintiff initiated this

lawsuit. Plaintiff alleges that Best Buy discriminated against her on the basis of race for

failing to give her appropriate pay increases, training, promotions, and discriminated

against her for taking FMLA leave.

## II. UNDISPUTED FACTS[1]

1. Best Buy is a well-known consumer electronics retailer with stores located
   throughout the United States. (Doc. 40, Ex. 2 at ¶ 2).

2. In Greater Cincinnati, Best Buy currently operates five retail locations. (Doc. 40,

---

[1] *See* Doc. 40, Ex. 1 and Doc. 61, Ex. 1.

Ex. 2 at ¶ 2).

3. At the time of Plaintiff's discharge, she was the Mobile Manager/Computer Supervisor at Best Buy Store Number 1474 located on Colerain Avenue in Cincinnati, Ohio.  (Doc. 85 at 31-32).

4. Plaintiff began her employment with Best Buy in 1995.  (Doc. 85 at 33; Doc. 40, Ex. 2 at ¶ 4).

5. Due to her long tenure with Best Buy, Plaintiff admits that she is generally familiar with Best Buy's policies and procedures.  (Doc. 85 at 74).

6. Plaintiff also admits that Best Buy posted its discrimination, harassment and retaliation policies in the break rooms at each Best Buy store.  (Doc. 85 at 74).

7. Plaintiff is familiar with Best Buy's hotline phone number and admitted her familiarity with Best Buy's discrimination, harassment, and retaliation policies. (Doc. 85 at 74, Ex. 4).

8. Plaintiff admits that she utilized the hotline number on a number of occasions during her employment.  (Doc. 85 at 148-149).

9. Best Buy's records reveal that Plaintiff utilized the hotline on more than thirty occasions.  (Doc. 85, Ex. 6).

10. Plaintiff was employed by Best Buy from 1995 through April 2014.  (Doc. 40, Ex. 2 at ¶ 4; Doc. 85 at 13).

11. During her long tenure, Plaintiff was only employed in two different Best Buy locations.  (Doc. 85 at 33).

12. Plaintiff was hired by Best Buy as an Appliance Supervisor.  (Doc. 85 at 33).

13. Plaintiff was promoted into the Operations Manager position at Best Buy Store 153 located on East Kemper Road (hereinafter "Tri-County").  (Doc. 85 at 34-35).

14. However, due to family issues, Plaintiff asked for and was permitted to move back into a supervisor position.  (Doc. 85 at 35).

15.  Plaintiff remained in this position until she sought and received a promotion to the Mobile Manager/Computer Supervisor position in 2009.  (Doc. 85 at 32).

16. The Mobile Manager/Computer Supervisor position was posted on Best Buy's job posting system.  (Doc. 85 at 35-36).

17.  Plaintiff applied for and was awarded the position.  (Doc. 85 at 35-36).

18. Plaintiff moved to Colerain with this promotion and was with the store when it first opened to the public.  (Doc. 85 at 32).

19.  Best Buy provides employees with two hours of pay per month for online training.  (Doc. 85 at 60).

20. Plaintiff admits that she took a large number of online training courses during her long career with Best Buy.  (Doc. 85 at 60-61, Ex. 3).

21. In addition to the online training courses, Plaintiff was also invited to several manager training courses.  (Doc. 85 at 62).

22.  Plaintiff recalls being invited to three or four in person training courses over the last five years of her employment.  (Doc. 85 at 62).

23.  The only training course that Plaintiff would have liked to receive, but did not, was SAS Training (Doc. 85 at 68).

24.  However, aside from Best Buy employees who held SAS positions, Plaintiff admits that this type of training was not provided to other employees.  (Doc. 85 at 68, 71).

25.  Plaintiff admits that she was happy at Best Buy.  (Doc. 85 at 163).

26.  In 2013, after having filed a charge of discrimination on September 25, 2012 challenging training and promotional opportunities, Plaintiff alleges that a General Manager played a video for Plaintiff and other store management employees.  (Doc. 85 at 135-138).

27. Plaintiff was offended by the video due to the portrayal of African Americans. (Doc. 85 at 136).

28.  Plaintiff did not complain about this video.  (Doc. 85 at 137).

29. In 2014, Plaintiff went on an approved medical leave of absence due to a knee replacement.  (Doc. 85 at 17).

30. Plaintiff was approved for Family and Medical Leave Act leave through May 6, 2014.  (Doc. 85 at 17).

31. Plaintiff was notified during the course of this leave that her position was being eliminated.  (Doc. 85 at 15).

32. Plaintiff was told by Best Buy that her position was eliminated based on the store's revenue number.  (Doc. 85 at 103).

33. Plaintiff admits that other Mobile Manager positions were eliminated in her Best Buy district.  (Doc. 85 at 110-111).

34. Plaintiff also admits that reorganizations are common in Best Buy.  (Doc. 85 at 58 -59).

35. During her long career, Plaintiff had been through three or four reorganizations. (Doc. 85 at 59).

36. On this occasion, Best Buy eliminated a large number of store level employees. (Doc. 40, Ex. 2 at ¶ 5).

37. Best Buy eliminated all Mobile Manager positions at stores with revenues less than a certain level.  (Doc. 40, Ex. 2 at ¶ 6).

38. In Plaintiff's district, a total of six Mobile Manager positions were eliminated, including four positions held by non-black employees.  (Doc. 40, Ex. 2 at ¶ 7).

### III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.     ANALYSIS[2]

### A.     Failure to Promote

To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

---

[2] As this Court held in Doc. 121 (Order on Motion to Strike), Plaintiffs alleged circumstantial evidence of discrimination (lifestyle groups, Marcussen's testimony, and Zoeller's declaration) is inadmissible. However, even if this Court had not stricken such evidence, it was insufficient to meet the "other acts" standard. *Schrack v. R&L Carriers, Inc.*, 565 F. App'x 441, 445. The factors to be considered by the Court are: "(1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers with the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations." *Id.* at 445. Plaintiff's evidence was insufficient to meet the other acts standard because it was "too vague and conclusory to determine if the nature of the claims is similar." *Id.* at 446.

Plaintiff claims that Best Buy failed to promote her after 2009. Specifically, she alleges that Best Buy denied her manager training that was provided to Ben Oblinger and April Fender, similarly-situated white employees. (Doc. 61, Ex. 2 at ¶ 22). Plaintiff claims that Best Buy repeatedly refused to provide her with additional training, which resulted in her not being promoted.

The last promotion Plaintiff sought was in 2009. (Doc. 85 at 32). Plaintiff was awarded a promotion to the Mobile Manager/Computer Supervisor position. (*Id.*) Aside from this promotion, <u>Plaintiff admits that she did not seek any other promotions</u> over the last ten years of her employment with Best Buy. (*Id.* at 72). In fact, Plaintiff fails to identify any specific positions at issue. Accordingly, Plaintiff's failure to promote claim fails as a matter of law, because she did not apply for any promotions. *See, e.g., Hall v. Michigan State Police Dep't*, 209 F. App'x 913, 918 (6th Cir. 2008) ("Hall declined to participate in the second round of interviews. This failure to apply means that Hall was unable to establish the second element of his *prima facie* case").

### B. Failure to Train

To state a claim for failure to train, Plaintiff must allege that she was treated less favorably than any other similarly situated employee, or was otherwise denied training opportunities because of her race. Training is not considered an actionable adverse action unless it results in a "deprivation of increased compensation as the result" of the failure to train. *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 429-430 (6th Cir. 2014). *See also Vaughn v. Louisville Water Co.*, 302 F. App'x 337 (6th Cir. 2008) (plaintiff's

training claim failed because the plaintiff "failed to present any evidence that she was passed up for promotions because of her inability to attend the … training.").

Plaintiff also alleges that she was denied "manager training" that would have helped her to get promoted. However, Plaintiff admitted that she took a large number of online training courses during her long career with Best Buy. (Doc. 85 at 60-61, Ex. 3). Additionally, Plaintiff was also invited to three or four in person training courses over the last five years of her employment. (*Id.* at 62). The only specific training course Plaintiff alleges she was denied is Stand-Alone-Store ("SAS") inventory training. (*Id.* at 68). "SAS" training was only for employees at the two SAS stores in Plaintiff's area – Store 161 located in Florence, Kentucky and Best Buy's Eastgate Store 154 located in Cincinnati, Ohio. (*Id.* at 63-67). However, aside from Best Buy employees who held SAS positions, Plaintiff admits that this type of training was not provided to other employees. (*Id.* at 68, 71). Plaintiff admits that she would have been offered the training if she would have applied and was awarded an SAS position. (*Id.* at 65-67). Accordingly, Plaintiff's allegations of failure to train fail as a matter of law.

### C. Racial Harassment

To establish a claim of racial harassment, Plaintiff must show: "(1) that [s]he 'belonged to a protected group,'; (2) that [s]he 'was subject to unwelcome harassment,' (3) that 'the harassment was based on race,' (4) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment,' and (5) that [Best Buy] 'knew or should have known about the harassment and failed to act.'"

*Reed*, 556 F. App'x at 432.  To make this determination, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff was employed by Best Buy for nearly eighteen years.  Over this period of employment, she alleges two instances of discrimination.  First, Plaintiff claims that her manager, Amanda Peterson, allegedly forced her to watch a racially discriminatory parody called "Beauty and the Beats" during a management meeting, in which Plaintiff was the only African American employee present.  Plaintiff states that she was offended by the video due to the portrayal of African Americans.  (Doc. 85 at 136).  However, Plaintiff did not complain about the video.  (*Id.* at 137).

Next, Plaintiff claims that her white co-employees, Eric McMillian and Jamie Stogdill, made racist comments about her in front of other employees.  Specifically, she alleges that McMillan and Stogdill referred to her hair as being full of "oil" and "grease" and that they called her "Aunt Jemima."  (Doc. 61-2 at ¶ 36, Ex. 2).

Accepting Plaintiff's allegations as true, two instances of discrimination simply does not satisfy the severe or pervasive standard as a matter of law.  *See, e.g., Reed*, 556 F. App'x at 433 (three instances, including one instance that was "troubling" did not meet the standard); *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000) (three offensive incidents, one involving touching and two involving explicit comments, was found insufficient to establish hostile work environment on the basis of sex).

8

### D.    FMLA Leave

Next, Plaintiff alleges that her discharge violated the FMLA, because she was discharged prior to the conclusion of her scheduled FMLA leave.  However, under the FMLA, "an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."  29 C.F.R. § 825.216(a).  The FMLA regulations provide that "[a]n employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."  29 C.F.R. § 824.316(a).  If an employee "would have lost his job or been laid off even if [she] had not taken FMLA leave," an employer does not violate the FMLA by terminating that employee while she is on leave.  *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 245 (6th Cir. 2004).

The 2013 reorganization impacted Best Buy stores across the country.  (Doc. 40, Ex. 2 at ¶ 5).  In Plaintiff's district, six Mobile Manager positions were eliminated.  (*Id.* at ¶ 7).  Best Buy did not rank the employees holding this position prior to the elimination.  (*Id* at ¶ 6).  Rather, stores with revenue below a certain threshold lost the position regardless of the employee's work performance or seniority.  (*Id.* at ¶ 6).  In addition to Plaintiff, four non-black employees holding the Mobile Manager position were impacted by the Mobile Manager reorganization.  (*Id.* at ¶ 7).  There is <u>no</u> evidence that Plaintiff was targeted because she was on FMLA leave.  Accordingly, Plaintiff's claim of FMLA discrimination fails as a matter of law.

### E.    Race Discrimination

Next, Plaintiff alleges a claim of race discrimination arising out of her April 2014 discharge.  Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of … race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In a Title VII case, a plaintiff bears the ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against her.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Unlawful discrimination does not have to be the only reason for an adverse employment action to violate Title VII, but rather must be an essential component of an employer's mixed motive.  A plaintiff may carry the burden by introducing direct evidence which shows that in treating a plaintiff adversely, the defendant was motivated by discriminatory intent, or by introducing circumstantial evidence that supports an inference of discrimination.  *Logan v. Denny's Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Plaintiff fails to present direct or circumstantial evidence that supports an inference of discrimination.  (*See* Doc. 121).  Accordingly, to prove a *prima facie* case of race discrimination, Plaintiff must prove: (1) that she is a member of a protected group; (2) that she was subject to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably.  *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).  In a reduction-in-force situation, Plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate

that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc*., 896 F.2d 1457, 1465 (6th Cir. 1990).

Plaintiff was discharged pursuant to a nationwide reorganization and her position was not replaced. Moreover, in Plaintiff's district, the reorganization included a total of six employees. (Doc. 40, Ex. 2 at ¶ 8). Of these employees, four were outside of Plaintiff's protected category. Therefore, Plaintiff cannot prove a *prima facie* case of race discrimination. (*Id*.)

Even if Plaintiff could prove a *prima facie* case, her claim still fails because she cannot prove pretext. "In a RIF situation, 'the most common legitimate reason for the discharge is the RIF itself.'" *Lawroski v. Nationwide Mut. Ins. Co.*, Case No. 13-4355, 570 F. App'x 589, 593 (6th Cir. 2014). Faced with Best Buy's legitimate reason for her discharge, Plaintiff has the ultimate burden to show that the reason is "merely pretext for [race] discrimination." *Id.* at 594.

Pretext can be proven by establishing that: (1) the preferred reasons has no basis in fact; (2) that the preferred reasons did not actually motivate the employer's actions; and (3) that they were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). In this case, Plaintiff admits that she was told that her store revenue determined whether her position was eliminated. (Doc. 85 at 103). Additionally, Plaintiff admits that others holding her position were also impacted by the reorganization. (*Id.* at 111). However, other than this limited knowledge, Plaintiff admits that she had no knowledge of the reorganization process. (*Id.* at 110). Finally,

Plaintiff admits that she was offered the opportunity to apply for other available positions, but she refused. (*Id.* at 104). If Best Buy had been targeting Plaintiff due to her race, Best Buy would not have offered her the opportunity to apply for another position. Accordingly, Plaintiff cannot prove pretext and therefore her race discrimination claim fails as a matter of law.

### F. Wage Discrimination

Finally, the Equal Pay Act ("EPA") prohibits employers from paying employees at a rate less than that paid to employees of the opposite sex or race for performing equal work. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)). To establish a *prima facie* case of wage discrimination under the EPA, plaintiffs must show that their employer pays different wages to employees of opposite sexes or races for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Id.* The employees' job title, responsibilities, experience and work record are reviewed to determine if two employees are similarly situated. *Leadbetter v. Giley*, 385 F.3d 683, 691 (6th Cir. 2004).[3]

---

[3] "Equal work does not require that the jobs be identical, but only that there exist substantial equality of skill, effort, responsibility, and working conditions." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). In comparing jobs under the Act (for purposes of establishing a *prima facie* case), the Court emphasizes that the jobs and not the employees are compared. Thus, "only the skills actually required by [the comparable] jobs, not the abilities of the persons currently in those positions are relevant [and] it is the job as a whole, not just selected aspects of it that must form the basis for comparison." *EEOC v. The City Council of the City of Cleveland*, No. 88-3726, 875 F.2d 863 (6th Cir. 1989).

"To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a nonmember for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). In other words, a plaintiff "must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523.[4]

Plaintiff alleges that Best Buy discriminated against her by failing to give her appropriate pay increases. The only potential comparable employee is Rory Murray. (Doc. 61, Ex. 2 at ¶ 24.) As to Murray, Plaintiff simply alleges that she trained Murray when he was initially hired and that Murray was allegedly paid more than her after the training was complete. (*Id.*) However, Plaintiff does not allege Murray's pay, position, supervisor, or any other information sufficient to prove a *prima facie* case of discrimination. Accordingly, Plaintiff fails to establish a *prima facie* case on her wage claim.

## V.   CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment on all claims asserted by Mary Bates (Doc. 40) is **GRANTED**. The Clerk

---

[4] Once a *prima facie* case is established, the burden shifts to the employer to prove one of four affirmative defenses by a preponderance of the evidence. *Balmer v. HCA, Inc.*, 423 F.3d 606, 612-613 (6th Cir. 2005). The four affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) any factor other than race, color, religion, sex, age, national origin, or ancestry. Ohio Rev. Code. § 4111.17(B)(1-4).

shall enter judgment accordingly, whereupon all of Plaintiff Mary Bates' claims are

**TERMINATED** in this Court.

        **IT IS SO ORDERED**.

Date:  1/20/2015                           *s/ Timothy S. Black*
                                            Timothy S. Black
                                            United States District Judge