UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSSILLEE PATTERSON, *et al*., | : | Case No. 1:13-cv-49 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BEST BUY CO., INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS ASSERTED BY PLAINTIFF CHONDA BETTS (Doc. 41)**

This civil action is before the Court on Defendant's motion for summary judgment

on all claims asserted by Chonda Betts (Doc. 41) and the parties' responsive memoranda

(Docs. 60, 99).

## I.  BACKGROUND

Plaintiff is a supervisor at Best Buy Store 153 on East Kemper Road in Cincinnati

(hereinafter "Tri-County").  (Doc. 87 at 71).  In 2013, after being employed by Best Buy

for over ten years, Plaintiff initiated this lawsuit.  Plaintiff alleges that Best Buy

discriminated against her on the basis of race for failing to give her appropriate pay

increases, training, and promotions.[1]

## II.    UNDISPUTED FACTS[2]

1.  Best Buy is a well-known consumer electronics retailer with stores located
    throughout the United States.  (Doc. 41, Ex. 2 at ¶ 2).

---

[1]  Plaintiff withdrew her claim for racial harassment.  (Doc. 60, fn. 1).

[2]  *See* Doc. 41, Ex. 1 and Doc. 60, Ex. 1

2.  In Greater Cincinnati, Best Buy currently operates five retail locations.  (Doc. 41, Ex. 2 at ¶ 2).

3.  Plaintiff is a current Best Buy employee at the Tri-County store.  (Doc. 87 at 71).

4.  Plaintiff began her employment with Best Buy in 2003.  (Doc. 87 at 65).

5.  Due to her eleven years of employment with Best Buy, Plaintiff admits that she is familiar with Best Buy's policies and procedures.  (Doc. 87 at 76).

6.  Plaintiff is aware that Best Buy's policies are posted online and in the break room at each Best Buy store.  (Doc. 87 at 77).

7.  Plaintiff is familiar with Best Buy's hotline phone number to report employee issues, including discrimination and harassment.  (Doc. 87 at 77-78).

8.  During her long tenure with Best Buy, Plaintiff has utilized the hotline phone number on two occasions.  (Doc. 87 at 78-79, Ex. 8).

9.  In addition to the hotline phone number, Plaintiff understood that she could bring complaints directly to her managers and the Best Buy human resources department.  (Doc. 87 at 134).

10. Although Plaintiff did present complaints to Best Buy during her employment, she admits that none of these complaints addressed alleged harassment or discrimination.  (Doc. 87 at 134-135, Ex. 8).

11. During her employment, Plaintiff has never had any race-based comments directed toward her.  (Doc. 87 at 90-92).

12. The one comment that Plaintiff objected to was a comment from a General Manager regarding another Best Buy employee.  (Doc. 87 at 92).

13. The alleged comment was that the General Manager wanted to beat the employee "like a piñata."  (Doc. 87 at 92).

14. Plaintiff did not report the comment.  (Doc. 87 at 92-93).

15. Plaintiff began her employment with Best Buy in 2003 as a cashier.  (Doc. 87 at 65).

16. Her initial rate of pay with Best Buy was $10.50.  (Doc. 41, Ex. 2 at ¶ 4).

17. Plaintiff next held the position of Customer Service Representative.  (Doc. 87 at 66).

18. Since 2009, although her title has changed due to reorganizations, Plaintiff's role at Tri-County has been Front End Supervisor.  (Doc. 87 at 65).

19. From 2003 to the present, Plaintiff has remained at Tri-County.  (Doc. 87 at 65).

20. As of August 2012, one month prior to the date that Plaintiff filed her charge of discrimination (Doc. 87, Ex. 1), Plaintiff's rate of pay had increased to over $18 an hour.  (Doc. 41, Ex. 2 at ¶ 5).

21. Due to two reorganizations in 2012 and 2014, the management structure at Tri-County has drastically changed.  (Doc. 87 at 71-74).

22. The top manager at Tri-County remains the General Manager position.  (Doc. 87 at 71).

23. Prior to the 2012 reorganization, Tri-County had four managers reporting directly to the General Manager.  (Doc. 87 at 73).

24. At that time, Tri-County also had six supervisors reporting directly to the managers at Tri-County.  (Doc. 87 at 73).

25. After the 2014 reorganization, Plaintiff, as a remaining supervisor, now reports directly to the General Manager.  (Doc. 87 at 71).

26. In addition to Plaintiff, there is only one assistant manager and another supervisor reporting directly to the General Manager.  (Doc. 87 at 71).

27. Today, there is one General Manager, one Assistant Manager and only three supervisor positions at Tri-County.  (Doc. 87 at 73-74).

28. In the 2014 reorganization, Plaintiff recalls that two or three manager positions were eliminated at Tri-County.  (Doc. 87 at 72).

29. Relevant to Plaintiff's supervisory position, Plaintiff recalls that four other supervisors had their positions eliminated at Tri-County in the 2014

reorganization.  (Doc. 87 at 73).

30.  In the 2012 reorganization, Plaintiff recalls that one manager position was eliminated.  (Doc. 87 at 72-73).

31.  Plaintiff recalls that supervisor positions were also eliminated in the 2012 reorganization, but she does not recall the number of positions impacted.  (Doc. 87 at 73).

32.  Plaintiff admits that she has voluntarily elected to remain at Tri-County during the course of her employment with Best Buy.  (Doc. 87 at 31).

33.  Plaintiff further admits that she is familiar with Best Buy's job posting procedures and that she has seen promotional opportunities on Best Buy's job posting system.  (Doc. 87 at 143).

34.  However, the only promotion Plaintiff has applied for is the supervisor position that she was awarded in 2008.  (Doc. 87 at 67).

35.  The only other position that she was interested in is a temporary manager position that came open when her manager went on a medical leave in 2010.  (Doc. 87 at 43).

36.  Plaintiff admits that this position was only available for two months.  (Doc. 87 at 43).

37.  Plaintiff was told by her General Manager when the position became available that the General Manger did not feel like Plaintiff was ready for the manager position.  (Doc. 87 at 124).

38.  The temporary position was awarded to Amanda Peterson.  (Doc. 87 at 124).

39.  Plaintiff admits that Amanda Peterson held the same supervisor position as Plaintiff at a different Best Buy location.  (Doc. 87 at 124).

40.  Plaintiff believes that her race may have played a role in the decision to promote Amanda Peterson to the temporary position because she was told by one of the other plaintiffs in this case, Rossilee Patterson, that Amanda Peterson was on a Performance Improvement Plan at the time of the promotion.  (Doc. 87 at 151-52).

41. Immediately prior to the promotion, Amanda Peterson reported to Tim Oldean. (Doc. 81 at 46-48).

42. Oldean confirmed that Rossilee Patterson was mistaken – Amanda Peterson was not on a Performance Improvement Plan at the time of the promotion.  (Doc. 81 at 47).

43. Rather, Amanda Peterson was a top performer in the district and had excellent performance reviews as a supervisor.  (Doc. 81 at 47-48).

44. On February 18, 2009, Plaintiff acknowledged her receipt of Best Buy's training procedures.  (Doc. 87, Ex. 9).

45. Best Buy provides employees with two hours of pay per month for online training. (Doc. 87 at 100).

46. Plaintiff admits that she took a large number of online training courses during her long career with Best Buy.  (Doc. 87 at 100-101, Ex. 10).

47. Despite the admittedly extensive training she has received since 2009 (Doc. 87 at 101), Plaintiff alleges that she was denied assistant manager training and permission to shadow other supervisors in "winning stores."  (*Id.* at 101-102).

48. Plaintiff does not know if this type of training still exists at Best Buy.  (Doc. 87 at 106).

49. As to shadowing, Plaintiff recalls that one former Tri-County supervisor was sent to shadow prior to 2009.  (Doc. 87 at 107-108).

50.  Plaintiff requested to shadow in 2011, but was told by her General Manager that the store did not have funds in its budget to permit the shadowing.  (Doc. 87 at 110).

51. Despite two significant reorganizations, Plaintiff remains a Best Buy employee. (Doc. 87 at 71).

52. Plaintiff admits that she has never been suspended.  (Doc. 87 at 179).

53. Over her eleven years of employment, Plaintiff was only disciplined on one occasion.  (Doc. 87 at 179).

54. The only discipline Plaintiff received was a Final Warning issued on October 20, 2012.  (Doc. 87, Ex. 13).

55. Plaintiff recalls the issue began with a customer asking her to provide him with a discount.  (Doc. 87 at 172-173).

56. Although Plaintiff did have the ability to reduce the price of the product and she oftentimes reduced the price of products when asked, she admits that she refused the customer's requests on this occasion.  (Doc. 87 at 173-174).

57. Plaintiff asked Amanda Peterson to handle the issue and Peterson handled the situation in a manner than Peterson felt was appropriate.  (Doc. 87 at 175).

58. Plaintiff does not know how Peterson handled the issue.  (Doc. 87 at 175).

59. Plaintiff admits that she approached Peterson after the customer left and she informed Peterson that she had to leave the store in order to "collect [her] thoughts."  (Doc. 87 at 170).

60. In 2013, Plaintiff was placed on a Performance Improvement Plan.  (Doc. 87, Ex. 12).

61. Plaintiff admits that in some of the sales categories her department was not meeting Best Buy's expectations.  (Doc. 87 at 160-161).

62. The Performance Improvement Plan was given to Plaintiff in August 2013 and was in effect for ninety days.  (Doc. 87, Ex. 12).

63. Plaintiff admits that the Performance Improvement Plan has not been raised with her since 2013.  (Doc. 87 at 159-160).

64. Performance Improvement Plans and written warnings are not uncommon at Best Buy.  (Doc. 41, Ex. 2 at ¶¶ 11-12).

65. In fact, one of Plaintiff's own supervisors, Michael Dreiling (white), was placed on a Performance Improvement Plan.  (Doc. 83 at 11; Doc. 41, Ex. 2 at ¶ 11).

66.  Additionally, numerous other white managers at Tri-County, including Aaron Reagan, Steve Renyolds, and Sean Gaynor were placed on a Performance Improvement Plan.  (Doc. 54 at 32-33; Doc. 41, Ex. 2 at ¶ 11).

## III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to

the Court demonstrates that there is no genuine issue as to any material fact, and that the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine

disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be

construed in a light most favorable to the party opposing the motion.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere

allegations or denials of his pleading, but . . .  must set forth specific facts showing that

there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## IV.  ANALYSIS[3]

### A.  Failure to Promote

To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) and individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.  *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

The only promotion that Plaintiff expressed interest in, but did not obtain during her employment, was a temporary manager position in 2010.  (Doc. 87 at 43).  Plaintiff admits that the position was only available for two months.  (*Id.*)  Plaintiff never applied for the position.  (Doc. 87 at ¶ 25).  Best Buy hired Amanda Peterson to fill the position.  Plaintiff's performance was average, at best, at the time, and Amanda Peterson was a top performer in the district.  (Doc. 41, Ex. 2 at ¶¶ 7-8).  Additionally, Peterson held the same

---

[3] As this Court held in Doc. 121 (order on Motion to Strike), Plaintiffs alleged circumstantial evidence of discrimination (Lifestyle Groups, Marcussen's testimony, and Zoeller's declaration) is inadmissible. However, even if this Court had not stricken such evidence, it was insufficient to meet the "other acts" standard. *Schrack v. R&L Carriers, Inc.*, 565 F. App'x 441, 445.  The factors to be considered by the Court are: "(1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers with the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations." *Id.* at 445.  Plaintiff's evidence was insufficient to meet the other acts standard because it was "too vague and conclusory to determine if the nature of the claims is similar." *Id.* at 446.

supervisor position as Plaintiff at a different Best Buy location.  (Doc. 87 at 124; Doc. 41, Ex. 2 at ¶ 7).

Plaintiff did not seek promotions because she claims that the "positions are predetermined."  (Doc. 60-2 at ¶ 28).  Plaintiff admits that she is familiar with Best Buy's job posting procedures and that she has seen promotional opportunities on Best Buy's job posting system.  (*Id.* at 143).  However, Plaintiff voluntarily elected to remain at Tri-County during the course of her employment.  (Doc. 87 at 31) ("No.  I've looked inside, but I wanted to stay at our store")).  Therefore, Plaintiff's failure to promote claim fails as a matter of law because she did not apply for any available positions.  *Hall v. Michigan State Police Dep't*, 290 F. App'x 913, 918 (6th Cir. 2008).

Even if Plaintiff could prove a *prima facie* case as to the 2010 promotion, Best Buy has a legitimate, nondiscriminatory reason for selecting Peterson for the temporary position.  Specifically, Peterson held the same supervisor position as Plaintiff at a different Best Buy location (Doc. 87 at 124; Doc. 41, Ex. 2 at ¶ 7) and she was a top performer in the district (Doc. 41, Ex. 2 at ¶ 8; Doc. 81 at 47-48).  Best Buy's judgment on the qualifications of the two employees is given deference by this Court.  *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (the role of federal courts is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments").

Plaintiff has the burden to prove pretext.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (the pretext inquiry considers whether "the legitimate reasons

offered by the defendant were not its true reasons, but were a pretext for discrimination").

Under Sixth Circuit precedent, a plaintiff may establish that a proffered reason is a mere

pretext by showing that: (1) the stated reason had no basis in fact; (2) the stated reason

was not the action reason; or (3) the stated reason was insufficient to explain Defendant's

action. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998).

Plaintiff does nothing more than claim she was qualified for the temporary promotion –

and therefore cannot meet her pretext burden. Accordingly, Plaintiff's failure to promote

claim fails as a matter of law.

### B.    Racial Discrimination

Plaintiff fails to present direct or circumstantial evidence that supports an

inference of discrimination. (*See* Doc. 121). Accordingly, in order to prove a *prima*

*facie* case of race discrimination, Plaintiff must prove: (1) that she is a member of a

protected group; (2) that she was subject to an adverse employment decision; (3) that she

was qualified for the position; and (4) that she was replaced by a person outside of the

protected class or that similarly situated non-protected employees were treated more

favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

Plaintiff remains employed by Best Buy and has never been suspended. The only

discipline that she received was a written warning and a performance improvement plan

("PIP").

In 2012, Plaintiff admits that supervisors and management employees at Tri-

County had their positions eliminated. (Doc. 86 at 72-73). In 2014, Plaintiff admits that

a larger reorganization took place and even more managers and supervisors had their positions eliminated.  (*Id.* at 72-73).  Plaintiff was not selected for either of these two reorganizations.  (*Id.*, Ex. 13).  However, Plaintiff was given a warning on October 20, 2012 for leaving her shift early.  (*Id.* at 170).

As to the PIP (Doc. 87, Ex. 12), Plaintiff admits that in some of the sales categories her department was not meeting Best Buy's expectations.  (Doc. 87 at 160-161).  The PIP was implemented in August 2013 and was in effect for ninety days.  (*Id.*, Ex. 12).  Plaintiff admits that the PIP has not been raised with her since 2013.  (*Id.* at 159-160).

Plaintiff has no evidence that race played any role in these actions.  PIP's and written warnings are not uncommon at Best Buy.  (Doc. 41-2 at ¶¶ 11-12).  In fact, one of Plaintiff's own supervisors, Michael Dreiling (white), was placed on a PIP.  (Doc. 83 at 11; Doc. 41-2 at ¶ 11).  Additionally, numerous other white managers at Tri-County, including Aaron Reagan, Steve Reynolds, Sean Gaynor were placed on a PIP.  (Doc. 54 at 32-33; Doc. 41-2 at ¶ 11).  Plaintiff does not testify that she was the subject of any race-based comments and suffered just two disciplinary actions in over eleven years of employment.  Therefore, Plaintiff cannot establish a *prima facie* case of discrimination.

### C.    Failure to Train

Next, Plaintiff alleges that Best Buy failed to provide proper training based on her race.

To state a claim for failure to train, Plaintiff must allege that she was treated less favorably than any other similarly situated employee, or was otherwise denied training opportunities because of her race. Training is not an actionable adverse action unless it results in a "deprivation of increased compensation as the result" of the failure to train. *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 429-430 (6th Cir. 2014). For example, in *Vaughn v. Louisville Water Co.*, 302 F. App'x 337 (6th Cir. 2008), the Sixth Circuit held that the plaintiff's training claim failed because the plaintiff "failed to present any evidence that she was passed up for the promotions because of her inability to attend the…training." *Id.* at 345.

Plaintiff's declaration alleges that she sought training in order to gain promotions. (Doc. 60, Ex. 2 at ¶ 4). However, Plaintiff admitted that she voluntarily elected to remain at Tri-County during the course of her employment with Best Buy. (Doc. 87 at 31) ("No. I've looked inside, but I wanted to stay at our store"). At Tri-County, the number of promotional opportunities for Plaintiff was greatly reduced because the number of manager and supervisory positions had been significantly reduced. (*Id.* at 71-74). In fact, the only promotion Plaintiff applied for is the supervisor position that she was awarded in 2008. (*Id.* at 67). Therefore, Plaintiff fails to prove that she would have gained any promotions had she received additional training.

Plaintiff admits that she took a large number of online training courses during her career with Best Buy. (Doc. 87 at 100-101, Ex. 10). However, Plaintiff alleges that she was specifically denied assistant manager training and permission to shadow other

12

supervisors in a "winning store." (*Id.* at 101-102). With respect to assistant manager training, Plaintiff admits that she never made a formal request to attend such training. (*Id.* at 102-103). As to shadowing, Plaintiff recalls that one former Tri-County supervisor was sent to shadow prior to 2009. (*Id.* at 107-108). Plaintiff requested to shadow in 2011, but was told by her General Manager that the store did not have funds in its budget to permit the shadowing. (*Id.* at 110). Plaintiff does not know of any white employees who were permitted to shadow in 2011. (*Id.* at 109, 111).

Accordingly, Plaintiff fails to state a *prima facie* case of failure to train.

**D.      Wage Discrimination**

Next, Plaintiff alleges that she has not been given a pay increase in the last five years because of her race.

The Equal Pay Act ("EPA") prohibits employers from paying employees at a rate less than that paid to employees of the opposite sex or race for performing equal work. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)). To establish a *prima facie* case of wage discrimination under the EPA, plaintiffs must show that their employer pays different wages to employees of opposite sexes or races for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Id.* The employees' job title, responsibilities, experience and work record are reviewed to determine if two employees are similarly situated. *Leadbetter v. Giley*, 385 F.3d 683,

13

691 (6th Cir. 2004).[4]

"To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a nonmember for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). In other words, a plaintiff "must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523.[5]

The only comparable that Plaintiff references is Daniel Koehler. (Doc. 60, Ex. 2 at ¶ 3). Plaintiff testified that Daniel Koehler was in a different department than her and reported to a different manager. (Doc. 87 at 16-17). Moreover, Plaintiff alleges that a co-Plaintiff, Lee Paterson informed her that when Koehler was promoted from an hourly position to a supervisory position that he received a pay increase. (*Id.* at 16-17). Plaintiff was unaware of the amount of that increase. (*Id.*) This does not establish a *prima facie* case of wage discrimination.

---

[4] "Equal work does not require that the jobs be identical, but only that there exist substantial equality of skill, effort, responsibility, and working conditions." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). In comparing jobs under the Act (for purposes of establishing a *prima facie* case), the Court emphasizes that the jobs and not the employees are compared. Thus, "only the skills actually required by [the comparable] jobs, not the abilities of the persons currently in those positions are relevant [and] it is the job as a whole, not just selected aspects of it that must form the basis for comparison." *EEOC v. The City Council of the City of Cleveland*, No. 88-3726, 875 F.2d 863 (6th Cir. 1989).

[5] Once a *prima facie* case is established, the burden shifts to the employer to prove one of four affirmative defenses by a preponderance of the evidence. *Balmer v. HCA, Inc.*, 423 F.3d 606, 612-613 (6th Cir. 2005). The four affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) any factor other than race, color, religion, sex, age, national origin, or ancestry. Ohio Rev. Code. § 4111.17(B)(1-4).

While Plaintiff claims that she "has not had a raise in 5 years" (Doc. 60 at 5), since June 2008, Plaintiff received five pay increases through August 2012.  (Doc. 41, Ex. 2 at A).  For example, when Plaintiff was promoted to a supervisory position, her wage records reflect that she received a $4.14 pay increase.  (Doc. 41, Ex. 2 at A).  Therefore, because it is standard practice for Best Buy to increase wages for hourly employees moving to supervisor positions, and Plaintiff has no evidence that race played a role in Koehler's wage increase, Plaintiff cannot prove pretext.

## V.  CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment on all claims asserted by Chonda Betts (Doc. 41) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon all of Plaintiff Chonda Betts' claims are **TERMINATED** in this Court

**IT IS SO ORDERED**.

Date:  1/20/2015                                        *s/ Timothy S. Black*
                                                          Timothy S. Black
                                                          United States District Judge