UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSSILLEE PATTERSON, *et al*., | : | Case No. 1:13-cv-49 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BEST BUY CO., INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS ASSERTED BY PLAINTIFF ROBERT REED (Doc. 42)**

This civil action is before the Court on Defendant's motion for summary judgment

on all claims asserted by Robert Reed (Doc. 42) and the parties' responsive memoranda

(Docs. 64, 101).

## I.  BACKGROUND

Plaintiff is a former Connective Business Group Manager at Best Buy.  After

successfully being employed by Best Buy for nearly nine years, Plaintiff initiated this

lawsuit.  Plaintiff alleges that Best Buy discriminated against him on the basis of race for

failure to promote, failure to train, disparate pay, and constructive discharge.[1]

## II.    UNDISPUTED FACTS[2]

1.  Best Buy is a well-known consumer electronics retailer with stores located
    throughout the United States.  (Doc. 42, Ex. 2 at ¶ 2).

2.  In Greater Cincinnati, Best Buy currently operates five retail locations.  (Doc. 42,

---

[1]  Plaintiff withdrew his racial harassment claim.  (Doc. 64, fn. 1).

[2]  *See* Doc. 42-1 and 64-1.

Ex. 2 at ¶ 2).

3. During his Best Buy career, Plaintiff worked for Best Buy in Michigan, Ohio, and Kansas.  (Doc. 77 at 38, 44-45, 68-69).

4. The last store Plaintiff worked at in Ohio was Best Buy Store 153 located on East Kemper Road (hereinafter "Tri-County").  (Doc. 77 at 56).

5. Plaintiff began his employment with Best Buy in 2004.  (Doc. 77 at 165, Ex. 7).

6. Plaintiff admits that he is generally familiar with Best Buy's policies and procedures.  (Doc. 77 at 97-98).

7. Plaintiff admits that Best Buy's policies prohibit discrimination, prohibit harassment and provide employees with a variety of complaint procedures.  (Doc. 77 at 98, Ex. 4).

8. As to the complaint procedures, Plaintiff was aware of Best Buy's open door policy and employee hotline.  (Doc. 77 at 98-100).

9. Best Buy's complaint procedures include a hotline phone number for Best Buy's HR Support Center that can be used anonymously.  (Doc. 77 at 100, Ex. 4).

10. Plaintiff admits that he utilized the hotline number on a number of occasions during his employment.  (Doc. 77 at 103-104, Ex. 5).

11. Plaintiff was employed by Best Buy from October 2004 through June 2013.  (Doc. 77 at 76, Ex. 7).

12. Plaintiff briefly left his Best Buy employment in 2005 for another job, but was rehired by Best Buy in 2006.  (Doc. 77 at 41-42, Ex. 7).

13. When initially hired, Plaintiff's rate of pay was $10.00 an hour.  (Doc. 77 at 60).

14. At the time of his resignation, Plaintiff's hourly rate of pay was $25.27 an hour and his annual salary was $52,000.  (Doc. 77 at 32).

15. In addition to this substantial increase in pay, Plaintiff further admits that he was promoted to acting General Manager, the top management position in the Best Buy stores, on two separate occasions.  (Doc. 77 at 22).

16. Plaintiff's initial position was part-time because Plaintiff accepted employment with Best Buy as a second job. (Doc. 77 at 38).

17. After a couple of months of employment, Best Buy promoted Plaintiff to a full-time position. (Doc. 77 at 41).

18. In 2007, Plaintiff applied for an opening in Ohio and transferred to Best Buy's Store 494 located in Cincinnati, Ohio (hereinafter "Fields-Ertel"). (Doc. 77 at 44-45).

19. Plaintiff stayed at Fields-Ertel until 2009. (Doc. 77 at 45).

20. In 2009, due to a reorganization at Best Buy, Plaintiff was notified that his supervisory position at Fields-Ertel was going to be eliminated. (Doc. 77 at 45-46).

21. However, with the help of his General Manager, Tim Oldean, Plaintiff was able to not only find another position with Best Buy prior to the termination of his employment, but the new position was a promotion. (Doc. 77 at 45; Doc. 81 at 36-39).

22. In 2010, Plaintiff transferred to Best Buy Store 153 located on East Kemper Road (hereinafter "Tri-County"). (Doc. 77 at 56).

23. Plaintiff remained at Tri-County until he sought and received a transfer to a Best Buy store located in Kansas. (Doc. 77 at 68-69; Doc. 42, Ex. 2 at ¶ 4).

24. Plaintiff received a $2,500 relocation allowance at the time of his transfer. (Doc. 77 at 74).

25. Plaintiff transferred to Kansas in a management position. (Doc. 77 at 74).

26. Plaintiff changes management roles in April 2013. (Doc. 77 at 75).

27. On June 20, 2013, due to a rumor that he would be placed on a Performance Improvement Plan, Plaintiff voluntarily resigned from his employment with Best Buy. (Doc. 77 at 76).

28. Plaintiff admits that Best Buy has a formal application process for open positions. (Doc. 77 at 179-180).

3

29. Plaintiff admits that he successfully used the application process in 2012 to transfer to Kansas.  (Doc. 77 at 181; Doc. 42, Ex. 2 at ¶ 5).

30. In addition, Plaintiff admits that his Best Buy career included a number of promotions.  (Doc. 77 at 128-129).

31. Plaintiff pointed to three positions that he would have liked to have received during his employment at Best Buy.  (Doc. 77 at 126-127).

32. Plaintiff admits that he did not formally apply for any of the positions.  (Doc. 77 at 179-180).

33. Plaintiff claims that he elected not to apply on each occasion because Kelly Broyles, the District Human Resources Manager, told him that he was not yet ready.  (Doc. 77 at 179-180).

34. Plaintiff does not recall Broyles being direct in her statement, but rather just telling him that there was "a couple more things" to complete.  (Doc. 77 at 180-181).

35. Plaintiff admits that he still was free to apply for the open positions, but he elected not to apply because he believe he would not be awarded the position due to Broyles' statements.  (Doc. 77 at 179-180).

36. The first position was a Magnolia Brand Manager.  (Doc. 77 at 127).

37. Plaintiff was working with the Magnolia Brand Manager, Eric McMillan, to take over the position after McMillan moved to a new position in Best Buy.  (Doc. 77 at 127-128).

38. However, after McMillan exited the Magnolia Brand Manager position, Best Buy eliminated the position and no Best Buy employee received the promotion.  (Doc. 77 at 127-128).

39. The position reopened after Plaintiff transferred to Kansas, but Plaintiff elected not to apply.  (Doc. 77 at 128).

40. The second position at issue was a General Manager position that came open in March 2010 at Best Buy's Store 617 located in Fairfield Township, Ohio (hereinafter Bridgewater Falls").  (Doc. 77 at 133).

4

41. April Quevedo was awarded this open position.  (Doc. 77 at 133; Doc. 42, Ex. 2 at ¶ 7).

42. Plaintiff had been in a management position for just over one year at this time.  (Doc. 77 at 133).

43. Plaintiff admits that Quevedo was also in a management position prior to the promotion.  (Doc. 77 at 133).

44. In fact, Plaintiff admits that Quevedo had held management positions for a longer period than Plaintiff.  (Doc. 77 at 133).

45. The third position at issue was a General Manager position that opened in 2011 at Tri-County.  (Doc. 77 at 130).

46. Plaintiff admits that he was placed into the interim General Manager position after the position came open due to an employee separation.  (Doc. 77 at 130).

47. However, the position was ultimately awarded to Tim Oldean, Plaintiff's former General Manager.  (Doc. 77 at 130-131; Doc. 42, Ex. 2 at ¶ 8).

48. Oldean was in a General Manager position and transferred into the open General Manger position.  (Doc. 77 at 131-132).

49. Plaintiff admits that Oldean was qualified for the General Manger position.  (Doc. 77 at 132).

50. Plaintiff admits that Best Buy offers online training to all Best Buy employees.  (Doc. 77 at 124-125, Ex. 6).

51. Plaintiff's training record from 2009 through 2012 is quite extensive.  (Doc. 77, Ex. 6).

52. In addition to this online training, Plaintiff's former General Manager, Tim Oldean, recalls that Plaintiff was selected by Eric McMillan, Plaintiff's General Manger, to attend General Manager Training.  (Doc. 81 at 40-41).

53. General Manager training was focused on a small group of management employees in the District who were handpicked by their General Managers for eventual promotion into the General Manger position.  (Doc. 81 at 40-41).

54. Oldrean recalls that this training took place in 2011.  (Doc. 81 at 40-41).

55. However, due to the change in District Mangers in late 2011, Oldean recalls that this General Manager program ended in Plaintiff's district at that time.  (Doc. 81 at 40-41).

56. Co-Plaintiff Rossilee Patterson also recalls Plaintiff and Co-Plaintiff Larry Patterson being selected for this General Manger training by Best Buy management.  (Doc. 76 at 48).

57. Rossilee Patterson does not recall who recommend Plaintiff for this training. (Doc. 76 at 151).

58. Plaintiff admits that he was never suspended during his employment with Best Buy.  (Doc. 77 at 171).

59. Finally, Plaintiff admits that he received a raise every year he was in management with Best Buy.  (Doc. 77 at 179).

60. Plaintiff identified a number of incidents that occurred during his employment with Best Buy that he believed raised race issues.  The first incident Plaintiff described took place in August 2010.  (Doc. 77 at 112).

61. Plaintiff alleges that a General Manager saw a part-time, African American employee carrying a MacBook Pro and said, "I know how much I pay her.  We need to count inventory."  (Doc. 77 at 112).

62. The next incident involved the General Manager kicking a third party, sales representative out of the building because the General Manger believed the individual was lazy and was on his phone all day rather than working for Best Buy.  (Doc. 77 at 112).

63. The individual was a black male.  (Doc. 77 at 112).

64. Plaintiff next alleges that a General Manager told Plaintiff that he did not believe a black female should be promoted because she is lazy and walks around like "she owns the store with her big lips hanging out."  (Doc. 77 at 113).

65. Plaintiff finally alleges that a General Manger said that he would beat a Latino employee "like a Mexican piñata."  (Doc. 77 at 115).

6

### III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

### IV.    ANALYSIS

#### A.    Failure to Promote

To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.  *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

7

Plaintiff pointed to three positions that he would have liked to have received during his employment at Best Buy. (Doc. 77 at 126-127). However, Plaintiff admits that he did not formally apply for any of the positions. (*Id.* at 179-180). *Hall v. Michigan State Police Dep't*, Case No. 06-2116, 290 F. App'x 913, 918 (6th Cir. 2008) ("Hall declined to participate in the second round of interviews. This failure to apply means that Hall was unable to establish the second element of his *prima facie* case").[3] Plaintiff claims that he elected not to apply for promotions because Kelly Broyles, the District Human Resources Manager, told him that he was not yet ready. (Doc. 77 at 179-180). Plaintiff does not recall Broyles being direct in her statement, but rather just telling him that there were "a couple more things" to complete. (*Id.* at 180-181). Plaintiff admits that he was still free to apply for the open positions, but he elected not to apply because he believed he would not be awarded the position due to Broyles' statements. (*Id.* at 179-180).

### 1.   *Magnolia Brand Manager*

Plaintiff was working with the Magnolia Brand Manager, Eric McMillian, to take over his position after McMillan moved to a new position in Best Buy. (Doc. 77 at 127-128). However, after McMillan exited the Magnolia Brand Manager position, Best Buy eliminated the position and no employee received the promotion. (*Id.*) The position

---

[3] Plaintiff admits that he successfully used Best Buy's application process during his employment. (Doc. 77 at 181). The most recent occasion that Plaintiff successfully utilized Best Buy's application procedure was in 2012, when he transferred to a management position in Kansas. (*Id.*)

reopened after Plaintiff transferred to Kansas, but Plaintiff elected not to apply.  (*Id.* at 128).

### 2.    *General Manager at Bridgewater Falls*

Next, a General Manager position became available in March 2010 at Best Buy's Store 617, located in Fairfield Township, Ohio (hereinafter "Bridgewater Falls").  (Doc. 77 at 133).  April Quevedo was awarded this position.  (Doc. 77 at 133; Doc. 42, Ex. 2 at ¶ 7).  Plaintiff had been in a management position for just over one year at this time. (Doc. 77 at 133).  Plaintiff admits that Quevedo was also in a management position prior to the promotion.  (*Id.* at 133).  In fact, Plaintiff admits that Quevedo had held management positions for a longer period than Plaintiff.  (*Id.*)

### 3.    *General Manager at Tri-County*

The third position at issue was a General Manager position that opened in 2011 at Tri-County.  (Doc. 77 at 130; Doc. 64-2 at ¶¶ 36-37).  Plaintiff admits that he was placed into the interim General Manager position after the position came open due to an employee separation.  (*Id.*)  However, the position was ultimately awarded to Tim Oldean, Plaintiff's former General Manager.  (Doc. 77 at 130-131; Doc. 42, Ex. 2 at ¶ 8). Oldean had already been a General Manager and transferred into the open General Manager position.  (Doc. 77 at 131-132).

Plaintiff admits that he did not formally apply for any of these three positions. (Doc. 77 at 179-180).  Based on this admission alone, Plaintiff cannot establish a *prima*

*facie* case for failure to promote.[4]

### B.    Failure to Train

To state a claim for failure to train, Plaintiff must allege that he was treated less favorably than any other similarly situated employee, or was otherwise denied training opportunities because of his race.  Training is not considered an actionable adverse action unless it results in a "deprivation of increased compensation as the result" of the failure to train.  *Reed*, 556 F. App'x at 429-430.  *See also Vaughn v. Louisville Water Co.*, 302 F. App'x 337 (6th Cir. 2008) (plaintiff's training claim failed because the plaintiff "failed to present any evidence that she was passed up for promotions because of her inability to attend the … training.").

Plaintiff admits that Best Buy offers online training to all Best Buy employees. (Doc. 77 at 124-125, Ex. 6).  In fact, Plaintiff's training record from 2009 through 2012 is quite extensive.  (*Id.*, Ex. 6).  Plaintiff's former General Manager, Tim Oldean, recalls that Plaintiff was selected by Eric McMillan, Plaintiff's General Manager, to attend General Manager Training.  (Doc. 81 at 40-41).  General Manager training was focused on a small group of management employees in the District who were handpicked by their General Managers for eventual promotion into the General Manager position.  (*Id.* at 40-

---

[4]  Moreover, even if Plaintiff could establish a *prima facie* case, Plaintiff does not challenge any of Best Buy's legitimate, nondiscriminatory reasons for not promoting Plaintiff to the three positions at issue. (Doc. 64 at 11-12).  Plaintiff admits that the Magnolia Brand Manager position was eliminated and no Best Buy employee received the promotion.  (Doc. 77 at 127-128).  Tim Oldean, Plaintiff's former General Manager, was awarded the 2012 General Manager position at Tri-County, and Plaintiff admits that Oldean was qualified for the General Manager position.  (*Id.* at 132).  Finally, April Quevedo was awarded the 2010 position at Bridgewater Falls and Plaintiff admits that Quevedo had held management positions for a longer period than Plaintiff at that time.  (*Id.* at 133).

41).  Oldean recalls that this training took place in 2011.  (*Id.* at 40-41).[5]  However, due to the change in District Managers in late 2011, Oldean recalls that this General Manager training program ended in Plaintiff's district at that time.  (*Id.* at 40-41).

The training request that was allegedly denied took place in 2010.  (Doc. 64-2 at ¶ 28).  However, since 2010, Plaintiff had not applied for any promotion that he did not receive.  Therefore, based on the undisputed fact that Plaintiff did not apply for any promotions after 2010, his training claim fails as a matter of law.[6]

### C.    Race Discrimination

Next, Plaintiff alleges a claim of race discrimination arising out of his alleged 2013 constructive discharge.  Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of … race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In a Title VII case, a plaintiff bears the ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against him.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  To prove a *prima facie* case of race discrimination, Plaintiff must prove: (1) that he is a member of a protected group; (2) that he was subject to an adverse employment decision; (3) that he

---

[5]  Co-Plaintiff Rossilee Patterson also recalls Plaintiff and Co-Plaintiff Larry Patterson being selected for this General Manager training by Best Buy management.  (Doc. 76 at 48, Ex. 5).

[6]  Even if Plaintiff could prove a *prima facie* case of failure to train, Plaintiff cannot prove pretext.  The manager training ended in Plaintiff's district in 2011 for all Best Buy employees.  (Doc. 81 at 40-41, Ex. 6).  Prior to 2011, Plaintiff's Co-Plaintiff, his former General Manager, and one of the alleged comparables all recall Plaintiff being sent to manager training.  (*Id.* at 40-41; Doc. 76 at 150-151; Doc. 56 at 51-52).  In 2010, Plaintiff alleges that he was denied manager training due to his store's budget.  (Doc. 77 at ¶ 28).  In 2010, neither of the comparables (Dreiling and Parker) were in the same store as Plaintiff.  (Doc. 83 at 14-15).  In sum, Plaintiff simply does not allege facts that support a finding that the alleged denial of training, if it occurred, was due to Plaintiff's race.

was qualified for the position; and (4) that he was replaced by a person outside of the protected class or that similarly situated non-protected employees were treated more favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

Plaintiff alleges that he was constructively discharged in June 2013 when he resigned from his employment with Best Buy. "A constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002). To demonstrate a constructive discharge, Plaintiff must prove that: (1) Best Buy "deliberately created intolerable working conditions, as perceived by a reasonable person," and (2) Best Buy "did so with the intention of forcing the employee to quit." *Logan v. Denny's Inc.*, 259 F.3d 558, 568-569 (6th Cir. 2001). Plaintiff admits that he sought and received a transfer to a Best Buy store located in Kansas. (Doc. 77 at 68-69). Plaintiff also admits that he elected to transfer to Kansas due to the opportunity to be close to his family. (*Id.* at 69). In fact, Plaintiff first saw a job posting for a Lawrence, Kansas position in May 2012 (*Id.* at 71), but ultimately accepted the offer to transfer in September 2012, because his mother became ill in August 2012 (*Id.* at 182). On June 20, 2013, due to a rumor that he would be placed on a Performance Improvement Plan ("PIP"), Plaintiff voluntarily resigned from his employment with Best Buy. (*Id.* at 76). Plaintiff decided that returning to school was his best option at the time. (*Id.* at 78-79).

Plaintiff admits that he was not actually placed on a PIP.  (Doc. 77 at 106).  In addition, had he been placed on a PIP, Plaintiff admits that he would have been given a set amount of time to improve his performance before any adverse action would be taken. (*Id.* at 106).  "A poor performance rating or a demotion, even when accompanied by a reduction in pay, does not by itself trigger a constructive discharge."  *King v. AC&R Adver.*, 65 F.3d 764, 768 (9th Cir. 1995).  Moreover, under Sixth Circuit law, even "proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other 'aggravating factors.'"  *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987).  As a matter of law, resigning because of a rumor that you may be placed on a PIP does not constitute constructive discharge.

## D.    Wage Discrimination

Finally, the Equal Pay Act ("EPA") prohibits employers from paying employees at a rate less than that paid to employees of the opposite sex or race for performing equal work.  *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)).  To establish a *prima facie* case of wage discrimination under the EPA, plaintiffs must show that their employer pays different wages to employees of opposite sexes or races for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.  *Id.* The employees' job title, responsibilities, experience, and work record are reviewed to

determine if two employees are similarly situated. *Leadbetter v. Giley*, 385 F.3d 683, 691 (6th Cir. 2004).[7]

"To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a nonmember for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). In other words, a plaintiff "must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523.[8]

From 2008 to 2013, Plaintiff's wages increased as follows: (1) $.18 increase on 5/4/08; (2) $1.35 increase on 7/13/08; (3) $.39 increase on 5/3/9; (4) $2.70 on 5/31/09; (5) $1.00 on 5/2/10; (6) $.82 on 5/1/11; (7) $.86 on 4/29/12; and (8) $.30 in 2013. (Doc. 77 at 165, Ex. 7). Plaintiff does not address the wages of the alleged comparables or raises that were allegedly discriminatory. (Doc. 64-2 at ¶ 27). Accordingly, Plaintiff fails to state a *prima facie* case of wage discrimination.

---

[7] "Equal work does not require that the jobs be identical, but only that there exist substantial equality of skill, effort, responsibility, and working conditions." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). In comparing jobs under the Act (for purposes of establishing a *prima facie* case), the Court emphasizes that the jobs and not the employees are compared. Thus, "only the skills actually required by [the comparable] jobs, not the abilities of the persons currently in those positions are relevant [and] it is the job as a whole, not just selected aspects of it that must form the basis for comparison." *EEOC v. The City Council of the City of Cleveland*, No. 88-3726, 875 F.2d 863 (6th Cir. 1989).

[8] Once a *prima facie* case is established, the burden shifts to the employer to prove one of four affirmative defenses by a preponderance of the evidence. *Balmer v. HCA, Inc.*, 423 F.3d 606, 612-613 (6th Cir. 2005). The four affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) any factor other than race, color, religion, sex, age, national origin, or ancestry. Ohio Rev. Code. § 4111.17(B)(1-4).

## V.    CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment on all claims asserted by Robert Reed (Doc. 64) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon all claims of Plaintiff Robert Reed are **TERMINATED** in this Court

**IT IS SO ORDERED**.

Date:  1/20/15                                      *s/ Timothy S. Black*
                                                 Timothy S. Black
                                                 United States District Judge