UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROSSILLEE PATTERSON, *et al*., | : | Case No. 1:13-cv-49 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| BEST BUY CO., INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS ASSERTED BY PLAINTIFF ROSSILEE PATTERSON
(Doc. 43)**

This civil action is before the Court on Defendant's motion for summary judgment

on all claims asserted by Rossilee Patterson (Doc. 43) and the parties' responsive

memoranda (Docs. 63, 98).

## I.  BACKGROUND

Plaintiff worked at Best Buy from 2006 until his separation in August 2012, as

part of a company-wide reorganization and reduction in force.  (Doc. 76 at 120, 124, Ex.

7).  Plaintiff alleges that Best Buy discriminated against him on the basis of race relating

to failure to promote and improper discharge. [1]

## II.    UNDISPUTED FACTS[2]

1.  Best Buy is a well-known consumer electronics retailer with stores located
    throughout the United States.  (Doc. 43, Ex. 2 at ¶ 2).

---

[1]  Plaintiff withdrew his racial harassment claim.  (Doc. 63, fn. 1).

[2]  *See* Doc. 43, Ex. 1 and Doc. 63, Ex. 1.

2.  In Greater Cincinnati, Best Buy currently operates five retail locations.  (Doc. 43, Ex. 2 at ¶ 2).

3.  Throughout his employment with Best Buy, Plaintiff was employed at Best Buy Store 153 located on East Kemper Road (hereinafter "Tri-County").  (Doc. 76 at 122).

4.  Plaintiff began his employment on August 29, 2006.  (Doc. 76 at 120).

5.  Plaintiff was responsible for posting Best Buy's policies relating to discrimination and harassment at Tri-County.  (Doc. 76 at 124-125).

6.  Plaintiff also admits the policies were posted on Best Buy's website.  (Doc. 76 at 124-125).

7.  Plaintiff was familiar with the policies and the complaint procedures available to Best Buy employees.  (Doc. 76 at 71-75, 124-125, Exs. 4-5).

8.  Best Buy's complaint procedures include a hotline phone number for Best Buy's HR Support Center that can be used anonymously.  (Doc. 76 at 124-125, Ex. 4).

9.  During his six years of employment, Plaintiff utilized the employee hotline on thirteen occasions.  (Doc. 76 at 125-126, Ex. 8).

10.  Plaintiff admits that he never used the employee hotline to report harassment or discrimination.  (Doc. 76 at 130).

11.  However, in 2008, Plaintiff alleges that the reported issues at Tri-County relating to development, training and recognition to the District's Human Resources Manager, Kelly Broyles.  (Doc. 76 at 86-87 and 130-131).

12.  During his six years of employment, Plaintiff admits that he heard only one inappropriate comment.  (Doc. 76 at 91-93).

13.  On this one occasion in 2012, Plaintiff alleges that his General Manager said that he would "like to beat that kid like a piñata" when referring to another Best Buy employee.  (Doc. 76 at 92).

14.  Plaintiff did not report the alleged comment.  (Doc. 76 at 93).

15.  Plaintiff was hired by Best Buy in August 2006.  (Doc. 76, Ex. 6).

2

16. At the time of his hire, Plaintiff completed an employment application. (Doc. 43, Ex. 2 at ¶ 5).

17. The application included Time Warner Cable as a previous employer. (Doc. 43, Ex. 2 at ¶ 5).

18. The application reported that Plaintiff was employed by Time Warner Cable for eight years and that Plaintiff's reason for leaving Time Warner Cable was "Laid off." (Doc. 43, Ex. 2 at ¶ 5).

19. Plaintiff was actually discharged by Time Warner. (Doc. 76 at 117).

20. Plaintiff admits that he was inappropriately using the gas card to fill up his personal car on the weekends. (Doc. 76 at 118-119).

21. Plaintiff's position with Best Buy gave him access to Best Buy's products, customer information, and customer payments. (Doc. 43, Ex. 2 at ¶ 7).

22. Plaintiff's first position with Best Buy was Operations Manager. (Doc. 76, Ex. 6).

23. Operating Manager at Tri-County was the only position Plaintiff held with Best Buy. (Doc. 76 at 120, 12).

24. In this position, Plaintiff supervised Best Buy employees, including Co-Plaintiff Chonda Betts. (Doc. 76 at 75, 121).

25. Plaintiff's management responsibilities included overseeing customer service, setting the employee schedules, and managing profit and loss. (Doc. 76 at 120-121).

26. In addition, as part of Tri-County management, Plaintiff participated in promotion decisions, including being part of the selection committees that unanimously determined Co-Plaintiffs Betts and Bates should be promoted. (Doc. 76 at 68-69).

27. In October 2009, Co-Plaintiff Betts and another direct report of Plaintiff were having an argument. (Doc. 76 at 190-193, Exs. 16-17).

28. Plaintiff called the two female employees into an administrative office. (Doc. 76, Exs. 16-17).

29. Once the door closed, Plaintiff claims he "let [his] human side come out and any part of professionalism was not present."  (Doc. 76, Ex. 17).

30. The subordinate reported that Plaintiff was "slamming his hands on the desk," yelling and cussing.  (Doc. 76, Ex. 16).

31. The subordinate further reported that Plaintiff told the two employees there would be "some fucking retaliation" and then Plaintiff left the room and slammed the door.  (Doc. 76, Ex. 16).

32. Plaintiff admits that he was angry.  (Doc. 76 at 193, Ex. 17).

33. Plaintiff denies that he used the term "fuck."  (Doc. 76 at 191).

34. Rather, Plaintiff claims that he used the term "shit."  (Doc. 76 at 191).

35. The incident was reported to the General Manager and the Human Resources Department.  (Doc. 76 at 199-200).

36. In fact, Plaintiff's General Manager concluded that Plaintiff "may not be [a] proper fit for Best Buy and it's culture due to his actions in this situation."  (Doc. 76, Ex. 18).

37. However, Best Buy did not discharge Plaintiff.  (Doc. 76 at 202).

38. Rather, Plaintiff was given a final written warning.  (Doc. 76 at 202).

39. A final written warning required Plaintiff to avoid additional discipline for a six month period or be subject to discharge.  (Doc. 76 at 202-203).

40. Within this six month period, Plaintiff had another incident with some of his subordinates.  (Doc. 76, Exs. 19-20).

41. On this occasion, Plaintiff made comments and jokes about an employee's hair extensions.  (Doc. 76, Ex. 19).

42. Plaintiff admits the comments constituted harassment.  (Doc. 76 at 207-208).

43. The matter was investigated by Best Buy.  (Doc. 76 at 208).

44. Plaintiff received a counseling notice from Best Buy in 2012. (Doc. 76, Ex. 21).

45. On this occasion, Plaintiff was placed on a Performance Improvement Plan (the "PIP"). (Doc. 76 at 209, Ex. 21).

45. Plaintiff was given the PIP in May 2012. (Doc. 76 at 209-210).

46. The PIP set forth three areas where Best Buy believed Plaintiff's performance needed to improve and planned actions for Plaintiff to improve in these three areas. (Doc. 76, Ex. 21).

47. Plaintiff alleges that he asked for, but was not permitted to attend profit and loss training in Louisville, Kentucky in 2008. (Doc. 76 at 148-149).

48. Plaintiff also would have liked to have attended General Manager training. (Doc. 76 at 150-151).

49. However, Plaintiff admits that a General Manager had to select employees for this training. (Doc. 76 at 150-151).

50. Although Plaintiff was not selected, he recalls two of his Co-Plaintiffs being selected for the General Manger training. (Doc. 76 at 150-151).

51. The promotion at issue was to General Manager at Tri-County in 2009. (Doc. 76 at 158).

52. Plaintiff recalls that four Best Buy employees applied for the position. (Doc. 76 at 96-97).

53. Two of the other applicants were white. (Doc. 76 at 97).

54. The applicant ultimately selected for the position was Edward Kao who is Asian. (Doc. 76 at 97; Doc. 43, Ex. 2 at ¶ 8).

55. Plaintiff does not know how long Kao was with Best Buy prior to the promotion. (Doc. 76 at 97).

56. This lawsuit involves three significant Best Buy reorganizations. Co-Plaintiff Robert Reed's position was eliminated in a 2009 reorganization. (Doc. 77 at 45-46).

57. Co-Plaintiff Chonda Betts described the 2012 and 2014 reorganizations and their drastic impact on Tri-County.  (Doc. 87 at 71-74).

58. Betts recalls that prior to the 2012 reorganization, Tri-County had four managers reporting directly to the General Manager.  (Doc. 87 at 73).

59. At that time, Tri-County also had six supervisors reporting directly to the managers.  (Doc. 87 at 73).

60. After the 2014 reorganization, there is only one assistant manager and another supervisor reporting directly to the General Manager.  (Doc. 87 at 71).

61. Today, in stark contrast to January 2012, there is one manager and only three supervisor positions at Tri-County.  (Doc. 87 at 73-74).

62. As part of the reorganization, Plaintiff was offered the choice of either a severance package or the opportunity to move into a supervisory position.  (Doc. 76 at 229, Ex. 7).

63. Plaintiff's General Manager offered Plaintiff a supervisory position in Tri-County's computer department at the time of the reorganization, but Plaintiff refused the position due to the pay level.  (Doc. 76 at 229).

64. Plaintiff understands and agrees that his manager position no longer exists at Tri-County.  (Doc. 76 at 226).

65. At the time of the 2012 reorganization, Tri-County had four assistant managers.  (Doc. 76, Ex. 23).

66. The four assistant managers included Plaintiff, Co-Plaintiff Robert Reed, Aaron Regan, and Amanda Peterson.  (Doc. 76 at Ex. 23).

67. Best Buy eliminated one of the four positions and ultimately concluded that Plaintiff should be selected for the position elimination.  (Doc. 76, Ex. 23).

### III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

### IV.    ANALYSIS

#### A.    Failure to Promote

To establish a *prima facie* case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.  *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Plaintiff only applied for one promotion during his employment with Best Buy, General Manager at Tri-County in 2009. (Doc. 76 at 158). Plaintiff recalls that four Best Buy employees applied for the position. (*Id.* at 96-97). Two of the other applicants were white. (*Id.* at 97). The applicant ultimately selected for the position was Edward Kao who is Asian. (*Id.* at 97; Doc. 43, Ex. 2 at ¶ 8). Plaintiff does not know how long Kao was with Best Buy prior to the promotion. (Doc. 76 at 97).

Plaintiff's disciplinary history with Best Buy and false employment application[3] call his qualifications for the General Manager position into question. Moreover, Best Buy ultimately selected a minority for the position (Doc. 76 at 98; Doc. 43, Ex. 2 at ¶ 8) and two white employees were not selected for the promotion. Kao was selected by Best Buy based on his work history, work performance, and management record. (Doc. 43, Ex. 2 at ¶ 8). Bust Buy's judgment on the qualifications of the four employees is entitled to deference. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (emphasizing that the role of federal courts is "to prevent unlawful hiring practices, not to act as a upper personnel department that second guesses employers' business judgment").

---

[3] By completing an employment application with Best Buy, Plaintiff certified "that the information given [was] true in all respects." (Doc. 43, Ex. 2 at ¶ 5). Plaintiff reported on his application that the reason he left one of his previous employers, Time Warner Cable, was because he was "Laid off." (Doc. 63 at 3). However, Plaintiff was terminated from Time Warner Cable for inappropriate use of a company vehicle and credit card. (*Id.* at 2). Plaintiff admits that he was discharged "[f]or using the company truck during times that [he] shouldn't have." (*Id.*) Plaintiff also admits that he was inappropriately using the gas card to fill up his personal car on the weekends. (*Id.* at 118-119). Best Buy claims that had it known about the reason for Plaintiff's discharge from Time Warner Cable, Plaintiff would not have been hired. (Doc. 43, Ex. 2 at ¶ 7). Had Best Buy learned this information prior to Plaintiff's 2012 discharge, he would have been discharged as a result of the false employment application. (*Id.*)

Accordingly, Plaintiff fails to state a *prima facie* case for failure to promote.[4]

### B.      Race Discrimination

Next, Plaintiff alleges a claim of race discrimination arising out of his August 2012 discharge.  Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of…race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In a Title VII case, a plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against him.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Unlawful discrimination does not have to be the only reason for an adverse employment action to violate Title VII, but rather must be an essential component of an employer's mixed motive.  A plaintiff may carry the burden by introducing direct evidence, which shows that in treating a plaintiff adversely the defendant was motivated by discriminatory intent, or by introducing circumstantial evidence that supports an inference of discrimination.  *Logan v. Denny's Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Plaintiff fails to present direct or circumstantial evidence that supports an inference of discrimination.  (*See* Doc. 121).  Accordingly, to prove a *prima facie* case of race discrimination, Plaintiff must prove: (1) that he is a member of a protected group; (2) that he was subject to an adverse employment decision; (3) that he was qualified for the position; and (4) that he was replaced by a person outside of the protected class or

---

[4]  Even if Plaintiff could prove a *prima facie* case, which he cannot, Best Buy had a legitimate, non-discriminatory reason for its decision.  Kao was selected by Best Buy based on his work history, work performance, and management record.  (Doc. 43, Ex. 2 at ¶ 8).

that similarly situated non-protected employees were treated more favorably.  *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).  In a reduction-in-force situation, Plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc*., 896 F.2d 1457, 1465 (6th Cir. 1990).

The 2012 RIF was company-wide.  (Doc. 43, Ex. 2 at ¶ 10).  Each of the four assistant managers in Tri-County were ranked based on seniority, their prior two performance evaluations, and an assessment completed by the General Manager.  (*Id.* at ¶ 10).  The employees were aware that a reorganization was coming in advance of the final decision.  (*Id.* at 43-44).  In fact, two other assistant managers at Tri-County, Aaron Reagan and Co-Plaintiff Robert Reed, sought other Best Buy positions via Best Buy's job opening system ("JOS"), in case they were selected for the RIF.  (Doc. 77 at 70-74, 181-184; Doc. 54 at 36-39).  Plaintiff was selected for discharge as a result of having received the lowest performance score of the four managers reviewed for termination.  However, Plaintiff was offered the choice of either a severance package or the opportunity to move into a supervisory position.  (*Id.* at 229, Ex. 7).  Specifically, Plaintiff's General Manager offered him a supervisory position in Tri-County's computer department, but he refused the position due to the pay level.  (*Id.* at 229).  Plaintiff understands and agrees that his manager position no longer exists at Tri-County.  (*Id.* at 226).

Plaintiff claims that he was replaced by an individual outside of the protected class, Aaron Reagan.  As to Reagan, he was offered a position in another store in advance

10

of the RIF. (Doc. 54 at 39). In order to determine whether he should accept the position, he approached the General Manager prior to the RIF and asked whether his position would be eliminated. (*Id.*) The General Manager told him that he was not selected for the reorganization. (*Id.*) Reagan testified that "diversity' was discussed in this meeting, but did not testify that Plaintiff was selected for RIF due to diversity issues. (*Id.* at 39-42).

Plaintiff presents no evidence that his race played a role in the decision to eliminate his position. In fact, co-Plaintiff Robert Reed was the highest ranked manager at Plaintiff's store and was selected for one of the newly created management positions at the Tri-County store.

Even if Plaintiff could prove a *prima facie* case, his claim still fails because she cannot prove pretext.[5] Faced with Best Buy's legitimate reason for his discharge, Plaintiff has the ultimate burden to show that the reason is "merely pretext for [race] discrimination." *Id.* at 594. Pretext can be proven by establishing that: (1) the preferred reasons has no basis in fact; (2) that the preferred reasons did not actually motivate the employer's actions; and (3) that they were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

Plaintiff cannot prove pretext. Plaintiff was offered an alternative position at Tri-County at the time of the reorganization. If Best Buy had terminated Plaintiff due to his

---

[5] The Sixth Circuit has held that "[i]n a RIF situation, 'the most common legitimate reason for the discharge is the RIF itself.'" *Laawroski v. Nationwide Mut. Ins. Co.*, 570 F. App'x 589, 593 (6th Cir. 2014) .

race, it certainly would not have offered him the opportunity to remain with the company. Plaintiff argues that Best Buy's proffered reason and motive for his separation are really a pretext for discrimination based on a conversation between Steve Reynolds and Aaron Reagan, because Reynolds placed Plaintiff on a PIP and completed an assessment form for Plaintiff shortly after taking over the General Manager position at Tri-County, and because there is conflicting testimony about who made the ultimate decision to terminate Plaintiff in the RIF. (*Id.*) However, Plaintiff ignores the fact that he had performance issues prior to Reynolds becoming the General Manager at Tri-County and also ignores the fact that Reynolds offered him an alternate position at Tri-County at the time of the reorganization. Moreover, Best Buy had prior grounds for Plaintiff's discharge, but elected not to take the action. Accordingly, the undisputed facts confirm the lack of race discrimination and Plaintiff's inability to prove pretext.

## V.    CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment on all claims asserted by Rossilee Patterson (Doc. 43) is **GRANTED**. The Clerk shall enter judgment according, whereupon all of Plaintiff Rossilee Patterson's claims are **TERMINATED** in this Court

**IT IS SO ORDERED**.

Date:  1/20/2015                                             *s/ Timothy S. Black*
                                                                        Timothy S. Black
                                                                        United States District Judge